[No. A052837. First Dist., Div. Four. Mar. 31, 1992.]

JAMES EDWARD CLARK, JR., Plaintiff and Appellant, v.
MYRNA KERBY, as Personal Representative, etc., Defendant and
Respondent.

COUNSEL

Feldman, Shaw & DeVore, David L. DeVore and Leslie J. Shaw for Plaintiff and Appellant.

Graham, Cone, McKinney, Roberts & Jackson and James A. Jackson for Defendant and Respondent.

OPINION

**ANDERSON, P. J.**—This case raises the question whether the requirements under our former "nonclaim" statute regarding notice to decedent's creditors comport with the due process standards announced by the United States Supreme Court in *Tulsa Professional Collection Services* v. *Pope* (1988) 485 U.S. 478 [99 L.Ed.2d 565, 108 S.Ct. 1340] (hereafter *Tulsa*). We conclude they do not as to known or reasonably ascertainable creditors. Accordingly, we reverse the trial court's decision to bar the claim of appellant James Edward Clark, Jr., and remand for determination of the factual question: was

Clark a known or reasonably ascertainable creditor of the estate of Vernon Robert Copeland?[1]

## I. STATUTORY SCHEME GOVERNING THESE PROCEEDINGS

 Under our "nonclaim" statute and, except as otherwise provided therein, creditors must file their claims against a decedent's estate in the manner and within the time provided in the Probate Code;[2] failure to file a timely claim generally bars action on the creditor's claim. (§ 9002.) However, the creditor's duty to file a claim is not triggered unless the personal representative gives proper notice.

At the operative times, the personal representative was required to mail notice of administration of decedent's estate to all creditors known to the representative within four months of issuance of letters. (Former § 9050,[3] added by Stats. 1987, ch. 923, § 93, p. 3016, operative July 1, 1988.) As to the rest of the world, including unknown creditors, publication of the statutory notice of death and petition to administer estate was sufficient notice (see former § 333). The period for filing a claim[4] against the estate in turn was dictated by the type of notice due: if actual notice were due, the creditor had 30 days from the date of notice of administration to file the claim; all other creditors had to file their claim within the four-month period following issuance of letters. (Former § 9100, subd. (a), added by Stats. 1987, ch. 923, § 93, p. 3017, operative July 1, 1988.)

Where no action for personal injuries or death was pending at the time of decedent's death and the creditor had not filed a claim within the specified time, the creditor could apply to file the claim if application were made within one year of accrual of the cause of action.[5] (Former § 720, added by Stats. 1987, ch. 923, § 38, pp. 2984-2985, operative July 1, 1988.)

## II. FACTS AND PROCEDURE

While towing a camp trailer on April 20, 1988, Vernon Copeland was traveling northbound on U.S. Highway 101 at an allegedly unsafe speed. The

---

[1]Respondent herein is Myrna Kerby, as personal representative for the estate.

[2]Unless otherwise indicated, all statutory references are to the Probate Code.

[3]Under this statute, the personal representative was deemed to have knowledge of a creditor if the representative were aware that the creditor had demanded payment from the decedent or the estate.

[4]The term "claim" includes a demand for payment based on tort liability of the decedent. (former § 9000, subd. (a)(1), added by Stats. 1987, ch. 923, § 93, p. 3015, operative July 1, 1988.)

[5]Additionally, under certain circumstances enumerated in the general "late claim" statute, a creditor who was out of state during the entire claims-filing period could petition to file a late claim. (Former § 9103, subd. (a)(1), added by Stats. 1987, ch. 923, § 93, p. 3017, operative July 1, 1988, amended by Stats. 1988, ch. 113, § 15.1, p. 476.)

trailer started whipping from side to side, causing him to lose control of his car and careen into a southbound traffic lane. Clark was driving in that lane. He attempted to avoid impact but, according to the California Highway Patrol (CHP) report, "unavoidably" struck Copeland's car broadside. Both drivers were found unconscious and were taken by ambulance to a hospital. Copeland sustained serious head injuries. Clark was released from the hospital after an overnight stay.

Copeland's daughter, Davita Stark, initiated conservatorship proceedings in May. Copeland died two months later on July 5, 1988.

Meanwhile, Clark retained the Law Offices of John Gardenal to represent him in his claim against Copeland for personal injuries and property damage. Mr. Gardenal sent a letter to Copeland on May 19, 1988, informing him that "we have been retained to represent [Clark] for injuries sustained as a result of the [April 20, 1988] accident." The letter was not returned as unclaimed. Ms. Stark testified that she received the letter and showed it to Attorney Buchanan, who was representing her as conservator at that time.

Buchanan's response was that it appeared Clark was suing her father or his estate for damages, he would "look into it" and she should "not . . . worry about it"—that was "why he had car insurance, so it would take care of that." Buchanan denied that Stark ever brought the letter to his attention. However, he acknowledged that he knew Clark was involved in the accident and had been hospitalized overnight; he also procured and reviewed a copy of the CHP accident report. Records of the insurance agent also showed that Buchanan was involved in postaccident matters, in particular with regard to negotiating medical benefits for Copeland.

At some point Buchanan stopped representing Stark and began representing the decedent's estate. In that capacity he caused a notice of death and a petition to administer the estate to be published on November 14, 21 and 28, 1988. The court issued letters testamentary to Myrna Kerby, decedent's sister, on December 12, 1988. Ms. Kerby stated she learned the day after the accident that another party was involved and had been released from the hospital after an overnight observation.

Gardenal's office also communicated with Copeland's insurance carrier as well as his local insurance agent. By the end of July 1988 staff had settled Clark's property damage claim with the insurance company. On January 3, 1989, the firm sent a confirming "representation" letter to the carrier concerning its representation of Clark "for injuries sustained due to [Copeland's] negligence." The claim examiner responded the next month with a request for medical bills, reports, etc.

Gardenal's office learned of Copeland's death on July 12, from an adjuster for his insurance company. On April 19, 1989, the firm filed a complaint for personal injuries and property damage on Clark's behalf against Copeland individually. Clark then changed attorneys, this time retaining the firm of Feldman, Shaw & DeVore. The substitution took place around May 15, 1989. On that same date the new firm filed a creditor's claim against Copeland's estate, which the personal representative rejected. On June 15, 1989, Feldman, Shaw & DeVore filed an amended complaint listing the defendant as the estate of Vernon Robert Copeland.

The matter went to trial on special defenses, the issue being whether Clark's action was barred for failure to timely file a creditor's claim. Clark's lawyer took the position that the California notice provisions were unconstitutional in light of *Tulsa, supra*, 485 U.S. 478. The court upheld the relevant statutes and ruled that Clark's action was barred. He then moved unsuccessfully for a new trial. This appeal followed.

### III. *Tulsa* AND SUBSEQUENT STATUTORY REVISIONS

*Tulsa*, decided April 19, 1988, establishes that as a matter of due process, state "nonclaim" statutes providing a short claimsfiling period cannot cut off the rights of known or reasonably ascertainable creditors who did not receive actual notice of commencement of probate proceedings. Relying on *Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652], which determined that state action affecting property must be accompanied by notification of such action, the court held that (1) a creditor's cause of action against the estate is a property interest protected by the Fourteenth Amendment, and (2) Oklahoma's "nonclaim" statute[6] implicated state action by providing for the probate court's intimate, pervasive and substantial involvement with the claim proceedings. (*Tulsa, supra*, 485 U.S. at pp. 485-488 [99 L.Ed.2d at pp. 575-577].)

In assessing the propriety of requiring actual notice to creditors, the court looked at the substantial and practical need for actual notice in this context, as well as the effect of this requirement on the state's interest in the swift dispatch of probate proceedings. The court noted that as a class, creditors might not be aware of a debtor's death or of commencement of probate, while the personal representative often would be beneficially interested and, thus, inclined not to call attention to a potential expiration date. It concluded

---

[6]Under the Oklahoma statute, upon appointment as executor or executrix and issuance of letters testamentary, the executor or executrix had to publish notice to creditors of the deceased; the creditor then had two months to file a claim or, subject to limited exceptions, he or she would be forever barred from pursuing a claim. (*Tulsa, supra*, 485 U.S. at p. 481 [99 L.Ed.2d. at pp. 572-573].)

that providing actual notice to known or reasonably ascertainable creditors was not inconsistent with the goals of "nonclaim" statues, recognizing that mail service is an inexpensive and efficient means calculated to provide actual notice, and that publication would suffice for other creditors. Finally, the court indicated that due process does not mandate impractical and extended searches, only reasonably diligent efforts to uncover the identities of creditors. Those with mere conjectural claims need not receive actual notice. (*Tulsa, supra,* 485 U.S. at pp. 489-490 [99 L.Ed.2d at pp. 577-579].)

In 1989 the California Law Revision Commission (Commission) recommended certain revisions to the code which it viewed as necessary to satisfy the constitutional standards announced in *Tulsa.* (Recommendation Relating to Notice to Creditors in Probate Proceedings (Jan. 1989) 20 Cal. Law Revision Com. Rep. (1990) p. 165 [hereafter Recommendation].) Noting that the court in *Tulsa* cited our statute in support of the notion that a few states already provided for actual notice (see *Tulsa, supra,* 485 U.S. at p. 490 [99 L.Ed.2d at pp. 578-579]), the Commission nonetheless expressed the view that existing law fell short of *Tulsa* standards because it cut off unnotified but "reasonably ascertainable" creditors with a short, four-month claim-filing requirement. (Recommendation, *op. cit. supra,* at pp. 169-170.)

The Commission proposed legislation that would permit creditors who did not have actual knowledge of administration of the estate during the four-month claim period to petition to file a late claim. If the estate were distributed by the time such a creditor acquired actual knowledge of administration, the creditor should have recourse against distributees of the estate. (Recommendation, *op. cit. supra,* at p. 170.)

The Legislature responded to these and other suggestions, and in 1990 repealed and reenacted the code operative July 1, 1991, with significant changes. (Stats. 1990, ch. 79, §§ 13, 14, No. 2 Deering's Adv. Legis. Service, p. 545.) As to the "nonclaim" provisions, the new law continues the requirement of actual notice to known creditors. (§ 9050.) However, the code does not impose a duty on the personal representative to search for creditors. (§ 9053, subd. (d).) But if the personal representative first learns of a creditor after expiration of the four-month period, he or she must give notice within thirty days of such knowledge. (§ 9051, subd. (c).)

Although such notice does not extend the creditor's time to file a claim (see § 9100; Cal. Law Revision Com. com., Deering's Ann. Prob. Code, § 9100 (1991) p. 585), the new scheme gives the creditor more latitude in filing late claims. For example, if neither the creditor nor his or her attorney in the matter had actual knowledge of administration of the estate more than

15 days before expiration of the 4-month period, the creditor can petition to file a late claim within 30 days of such knowledge. (§ 9103, subd. (a)(1).) The court cannot allow the late claim if it has already ordered final distribution or one year has passed since issuance of letters. (§ 9103, subd. (b)(1), (2).) It may also deny the claim if there has been a preliminary distribution to beneficiaries or payment to general creditors, and it appears that the claim would cause or tend to cause unequal treatment among beneficiaries or creditors. (§ 9103, subd. (c).) As to permitted claims, the court also has discretion to condition the claim "on terms that are just and equitable." (§ 9103, subd. (c).) Additionally, as a practical matter the seemingly open-ended period for filing a late claim is circumscribed by the statute of limitations applicable to actions against the decedent that survive his or her death. (Code Civ. Proc., § 353.)[7] Indeed, the statute makes it clear that filing a late claim cannot resurrect a claim otherwise barred by this statute of limitations. (§ 9103, subd. (b)(2).)

Finally, distributees are personally liable for claims of an omitted creditor where: (1) the creditor's identity was known to or reasonably ascertainable by the personal representative within four months of issuance of letters and the claim is not merely conjectural; (2) the creditor did not receive notice of administration, and neither the creditor nor his or her attorney had actual knowledge of administration before the court made its order of final distribution; and (3) the statute of limitations governing the claim had not expired. (§ 9392.)[8]

## IV. ANALYSIS

Under the statutes in place at the time, Myrna Kerby, personal representative of Copeland's estate, was not required to send notice to Clark if, as of April 12, 1989, she had no knowledge of his claim for personal injuries. Under these circumstances, publication would suffice and Clark had until April 12 to file his claim. Failing that and, because there was no action pending at the time of Copeland's death, he could apply for permission to

---

[7] As to such actions where the defendant dies on or after January 1, 1991, Code of Civil Procedure section 353 prescribes a one-year statute of limitations from the date of death for all claims against the decedent. (Code Civ. Proc., § 353, subd. (b).) For those dying on or after July 1, 1988, but before January 1, 1991, as did Copeland, the limitation period runs before the earlier of (1) January 1, 1992, or (2) one year after issuance of letters or the time otherwise limited for commencement, whichever is later. (Code Civ. Proc., § 353, subd. (d)(1), (2).)

[8] In the words of the Commission, this new provision "implements the rule of *Tulsa* . . . that the claim of a known or reasonably ascertainable creditor whose claim is not merely conjectural but who is not given actual notice of administration may not be cut off by a short claim filing requirement." (Cal. Law Revision Com. com., Deering's Ann. Prob. Code, § 9392 (1991) p. 674.)

file his claim no later than April 20, 1989, one year from the date of accrual of his cause of action. Clark missed both dates, not filing his claim until May 15, 1989. His former attorneys knew of decedent's death as of July 12, 1988, but did not discover the pending estate until approximately April 19, 1989, when their investigator filed the complaint and searched the court records.

■ The court reasoned that the statutory scheme was constitutional in part because former section 720 provided a brief window of opportunity within which Clark could apply for permission to file a late claim. The court further reasoned that as applied to the facts of the case, the scheme was constitutional because Clark was represented by counsel who: (1) early on knew of Copeland's death; (2) should have been familiar with the statutory requirements governing the filing of creditors' claims; and yet (3) made no effort to discover if an estate had been opened or to open one themselves.

We conclude that the court failed to interpret the statutory scheme in light of *Tulsa*. First, the court made no factual finding as to whether Clark was a known or reasonably ascertainable creditor. Clark requested that the court include as part of its factual basis a finding that he was a known or reasonably ascertainable creditor. The court refused, instead, issuing a statement of decision and judgment that made no reference to this key issue. The evidence and inferences conflicted on this point.

Second, we do not agree that the late claimfiling provision (former § 720) solved the constitutional problems. Although in some cases it may have extended the claimsfiling period, that extension could be so short as to be meaningless—witness this case, where the statutory extension amounted to a maximum of eight days. More importantly, former section 720 does nothing to address the issue of actual notice. The fact remains that Gardenal's office never received notice of administration from decedent's personal representative, and did not acquire knowledge of the estate proceedings until the day before that extended period expired. A creditor's claim was filed within 26 days of learning of the administration.

There is still the question whether a creditor's or attorney's knowledge of decedent's death somehow dilutes the constitutional requirements set forth in *Tulsa*. The creditor there was (1) a subsidiary of the hospital where decedent died after a four- or five-month stay, as well as (2) the assignee of a claim for "expenses of last illness" connected with his stay. The creditor filed its claim four and one-half years after decedent's death. With these facts we find it hard to conjure that the creditor or its parent was unaware of decedent's death during this lengthy hiatus. The Supreme Court did not concern itself with the issue of knowledge of death (as opposed to notice of administration), whether on the part of the creditor or its attorney.

Nevertheless, the rationale of *Tulsa* is that as a practical matter creditors need actual notice because they may not know of their debtor's death or the initiation of probate proceedings. On the other hand, the self-interest of the personal representative runs counter to calling attention to the expiration of the claim period. (*Tulsa, supra,* 485 U.S. at p. 489 [99 L.Ed. at p. 577-578].) *Tulsa* puts the burden on the personal representative to notify known or reasonably ascertainable creditors. Indeed, Gardenal in his deposition commented that he interpreted *Tulsa* as putting the obligation on the representative to notify the creditor of the opening of the estate so the creditor could file a claim. It has never been the debtor's death that triggers the duty to file a claim; rather, it is the commencement of administration and publication or actual notice. ██ ██ Thus, even if an attorney for a creditor knows that the debtor died, unless administration has commenced there is neither need nor any practical procedure for filing a claim.[9]

The Commission, in commenting on current section 9103, with its provision for filing a late claim if neither the creditor nor the attorney representing the creditor in the matter had actual knowledge of administration, notes: "Constructive knowledge through publication of a notice of death or other information that does not come to the attention of the creditor is not knowledge for the purpose of subdivision (a)(1). The standard applicable to the creditor's attorney is different. The creditor is not held responsible for any actual knowledge the attorney may have of the decedent's death unless the attorney is representing the creditor in the matter involving the decedent." (Cal. Law Revision Com. com., Deering's Ann. Prob. Code, § 9103, (1991) p. 592.)

We find this comment troublesome because for the first time it speaks of knowledge of death rather than knowledge of administration. Again, for *Tulsa* and our nonclaim statute, the starting point for analyzing the notice and claim rules is the commencement of administration. Actual knowledge of someone's death can never amount to constructive knowledge of administration; after all, administration might never occur.

We reverse the judgment and remand: (a) for a determination of whether Clark was a known or reasonably ascertainable creditor of Copeland's estate,

---

[9]We recognize that a creditor, as an "interested person," could petition the court to commence proceedings to administer a decedent's estate. (§§ 48, 8000.) However, as a practical matter, the required contents of the action—including identifying information about each heir and devisee of decedent, to the extent known or reasonably ascertainable by the petitioner, the character and estimated value of the estate, and a copy of the will, if any—are such that most creditors would not be in a position to complete the petition on their own. Moreover, as a matter of due process, a creditor should not have to perform the very act of which he is entitled to notice.

and (b) for further proceedings if necessary, consistent with *Tulsa* and this opinion. Costs on appeal to Clark.

Poché J., and Reardon, J., concurred.

A petition for a rehearing was denied April 21, 1992, and respondent's petition for review by the Supreme Court was denied June 25, 1992. Panelli, J., was of the opinion that the petition should be granted.