[No. E012417. Fourth Dist., Div. Two. Apr. 4, 1995.]

INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Plaintiff and Appellant, v. DEVENDRA SINGH NARULA, as Personal Representative, etc., Defendant and Respondent.

[No. E013717. Fourth Dist., Div. Two. Apr. 4, 1995.]

Estate of MANJIT SINGH Deceased.
DEVENDRA SINGH NARULA, as Personal Representative, etc., Petitioner and Respondent, v.
INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Objector and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. Portions deleted are noted by the insertion of the following symbol at the points of ommission [[ ]].

**COUNSEL**

Davis & Drum and Joel Drum for Plaintiff and Appellant and for Objector and Appellant.

Cummins & White, Kent M. Bridwell, Robert S. Horwitz, Warren & Herman and Judith Warren-Yaconelli for Petitioner and Respondent and for Defendant and Respondent.

**OPINION**

**HOLLENHORST, J.—**

[[]]* Plaintiff appeals from the judgment entered after the trial court sustained defendant's demurrer to Plaintiff's complaint without leave to amend. [[]]*

### PROCEDURAL BACKGROUND (E012417)

On April 16, 1992, Plaintiff initiated this action against Devendra Singh Narula, personal representative of the estate of Manjit Singh, deceased

---

*See footnote, *ante,* page 1140.

(Defendant).[1] Following Defendant's challenge to the initial pleadings, Plaintiff filed its amended complaint (the Complaint) on September 1, 1992. Plaintiff seeks damages on its rejected claim against the estate. Defendant demurred to the Complaint and the trial court sustained the demurrer without leave to amend. The case was dismissed on December 17, 1992, and Plaintiff initiated its [[]]* appeal [[]]*.

### STANDARD OF REVIEW

Where a trial court sustains a demurrer without leave to amend, we review such action under the abuse of discretion standard. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].) If there is a reasonable possibility that the pleading can be cured by an amendment, the trial court's ruling will be reversed. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

On review, we examine the Complaint's factual allegations to determine whether they state a cause of action on any available legal theory. (*Saunders* v. *Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186].) We treat the demurrer as admitting all material facts which were properly pleaded. (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) However, we will not assume the truth of contentions, deductions, or conclusions of fact or law (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903]) and we may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken. (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].)

### FACTS[2]

In March 1991, Plaintiff and Manjit Singh (Decedent) entered into a stipulation for entry of judgment in the amount of $4,498.94, based upon an automobile accident occurring on June 14, 1989. Pursuant to the stipulation, Decedent was to pay Plaintiff $50 per month. If there was a default in payments, a default judgment for the unpaid balance could be entered against Decedent. Decedent made one payment before he died on May 21, 1991.

Defendant is Decedent's duly appointed personal representative. Testamentary letters were issued to Defendant in August 1991. The time for filing

---

[1]On August 1, 1994, this court granted Defendant's application to substitute Sarita Singh as the new personal representative of the estate of Manjit Singh in place of Davendra Singh Narula.

*See footnote, *ante*, page 1140.

[2]We summarize those facts which were properly pleaded in the Complaint.

a creditor's claim against the estate expired in December 1991. On January 21, 1992, Plaintiff was notified of the death of Decedent. On February 10, 1992, Plaintiff filed a claim against the estate in the amount of $4,482.54. The claim was rejected.

ISSUES ON APPEAL

By way of its Complaint, Plaintiff seeks to recover losses incurred as a result of the estate's rejection of its claim. The trial court sustained Defendant's demurrer to the Complaint without leave to amend because Plaintiff failed to follow the procedures prescribed by the Probate Code for filing an untimely claim. On appeal, Plaintiff challenges the trial court's ruling on the demurrer and raises the issue of whether or not California's Probate Code complies with constitutional due process.

[[]]*

ARGUMENT

■ Plaintiff challenges the constitutionality of California's Probate Code to the extent that it pertains to the administration of creditor claims against the estate of a decedent. Plaintiff contends that the "United States Supreme Court has unequivocally established that a personal representative of an estate must attempt to identify creditors of a decedent." (*Tulsa Professional Collection Services* v. *Pope* (1988) 485 U.S. 478 [99 L.Ed.2d 565, 108 S.Ct. 1340].) Moreover, Probate Code section 9103³ which allows for the filing of a late claim does not cure the defect resulting from the personal representative's failure to identify a given creditor.

In response, Defendant points out that the Probate Code was amended in 1990 to give "the creditor more latitude in filing late claims." (*Clark* v. *Kerby* (1992) 4 Cal.App.4th 1505, 1511 [6 Cal.Rptr.2d 440].⁴) She argues that Plaintiff cannot be heard to complain that its constitutional rights were violated because it failed to follow the procedural alternative available, i.e., section 9103. Based upon our review of the facts, as set forth in the Complaint, and the applicable law, we agree with Defendant.

A. *The Tulsa Decision:*

In its 1988 *Tulsa* decision, the United States Supreme Court held that the "nonclaim" provisions of Oklahoma's Probate Code were invalid. According

---

*See footnote, *ante*, page 1140.

³All further statutory references are to the Probate Code unless otherwise indicated.

⁴Because the issues in *Clark* addressing notice to "known" or "reasonably ascertainable" creditors involved the Probate Code sections prior to the 1990 amendment, we do not find the holding in *Clark* controlling in this case.

to that statute, creditors of a decedent were allowed only two months in which to submit claims against the decedent's estate. Subject to a couple of limited exceptions, claims not presented within that narrow window were thereafter barred. At the same time, creditors were not entitled to actual notice of the estate administration under Oklahoma law. The only requirement was that the executor or executrix publish notice for two weeks in a local newspaper. Thus, even a creditor who was actually known to the estate representative might not receive effective notice of its looming deadline. (*Tulsa Professional Collection Services* v. *Pope, supra,* 485 U.S. 478, 481, 489 [99 L.Ed.2d 565, 577-578, 108 S.Ct. 1340].) The court opined that since estate representatives often acquire a beneficial interest in the estate, they are likely to harbor a personal incentive not to provide actual notice for the benefit of creditors. (*Id.,* at p. 489 [99 L.Ed.2d at pp. 577-578].)

The *Tulsa* court recognized that the state "undeniably has a legitimate interest in the expeditious resolution of probate proceedings." (*Tulsa Professional Collection Services* v. *Pope, supra,* 485 U.S. 478, 489 [99 L.Ed.2d 565, 577-578, 108 S.Ct. 1340].) The court further observed that "[t]he entire purpose and effect of the nonclaim statute is to regulate the timeliness of such claims and to forever bar untimely claims . . . ." (*Id.,* at p. 488 [99 L.Ed.2d at p. 577].) However, given the likelihood that known or easily identified creditors would not respond in time to preserve their claims, the *Tulsa* court concluded that additional assurances of fair notice were required as a matter of federal due process. (*Id.,* at pp. 489-491 [99 L.Ed.2d at pp. 577-579].) Specifically, the court held that known or "reasonably ascertainable" creditors were entitled to actual and timely notice of the estate proceeding. Whether or not a creditor is "reasonably ascertainable" depends in turn upon whether that creditor's identity would be uncovered with "reasonably diligent efforts" on the administrator's part. (*Id.,* at p. 491 [99 L.Ed.2d at p. 579].) Notably, in reaching this conclusion, the *Tulsa* court observed that a few states, including California, "already provide for actual notice in connection with short nonclaim statutes." (*Id.,* at p. 490 [99 L.Ed.2d at pp. 578-579].)

In sum, the *Tulsa* decision "establishes that as a matter of due process, state 'nonclaim' statutes providing a short claimsfiling [*sic*] period cannot cut off the rights of known or reasonably ascertainable creditors who did not receive actual notice of commencement of probate proceedings." (*Clark* v. *Kerby, supra,* 4 Cal.App.4th 1505, 1510.)

B. *The Probate Code Provisions:*

In 1990, California's Probate Code was amended to more fully address the concerns discussed in *Tulsa.* (*Clark* v. *Kerby, supra,* 4 Cal.App.4th 1505,

1511.) These revisions, which became operative on July 1, 1991, not only attempt to ensure that creditors receive constitutionally sufficient notice, subject to the practicalities of estate administration (§ 9050), but they also give creditors more latitude in filing late claims. (*Ibid.*)

Section 9050 provides: "(a) Subject to Section 9054, if a general personal representative has knowledge of a creditor of the decedent, the personal representative shall give notice of administration of the estate to the creditor. The notice shall be given as provided in Section 1215. For the purpose of this subdivision, a personal representative has knowledge of a creditor of the decedent if the personal representative is aware that the creditor has demanded payment from the decedent or the estate. [¶] (b) The giving of notice under this chapter is in addition to the publication of the notice under Section 8120."

However, section 9053, subdivision (d) states that "[n]othing in this chapter imposes a duty on the personal representative to make a search for creditors of the decedent." We interpret this section to include the notice obligations as provided for in *Tulsa.* However, to the extent that these sections, by themselves, fail to satisfy constitutional due process, the Legislature enacted sections 9103, 9352, and 9392.

Section 9103 allows creditors, who were not given proper notice and who were not aware of the estate administration, leave to file a late claim under specified conditions. Any type of claim is eligible; however, the late-claim remedy is barred if the Code of Civil Procedure section 366.2 one-year limitations period has expired.

Section 9352 tolls the one-year limitations statute by the timely filing of a creditor's claim or a section 9103 petition to file a late claim.

Section 9392 provides that distributees of estate property may become personally liable to omitted creditors under certain circumstances. Thus, despite their failure to file a claim in the estate administration, unnotified creditors, with more than mere conjectural claims, who, either personally or through their attorneys, were not aware of the estate administration before the court's order of final distribution and who were "known to" or "reasonably ascertainable by" the estate's general personal representative within four months after the date letters first issued may proceed against the estate's distributees for a pro rata satisfaction of their claims.

Accordingly, we find that the above sections of the Probate Code comply with constitutional due process.

## C. *Application of the Law to the Facts of This Case:*

 After examining the facts of this case in light of the applicable law, we are not persuaded by Plaintiff's arguments. First, we know that, pursuant to a stipulation for entry of judgment between Decedent and Plaintiff, Decedent was obligated to pay $50 per month on the first of every month until the entire amount of $4,498.94 was paid in full. After making one payment on May 1, 1991, Decedent died. Upon failure to make timely payments, Plaintiff was authorized to enter and execute on the judgment in the full amount, less any payments received by Decedent. Despite the fact that Plaintiff did not receive any payments after May 1, 1991, Plaintiff did not take any action to collect on the stipulation for entry of judgment until February 1992. There is no indication in the record that Plaintiff sent any demand or notice of its claim prior to February 1992. Thus, there is no evidence that Defendant "knew" or could have "reasonably ascertained" the identity of Plaintiff as a creditor of the estate prior to January 1992.

Second, when Plaintiff was notified of Decedent's death in January 1992, it submitted a claim which upon rejection lead to the filing of this action without having first invoked the remedial provisions of section 9103. Having failed to follow the procedural requirements as provided for in the Probate Code, Plaintiff complains that its constitutional rights were violated. As Defendant points out, "where parties have failed to invoke a remedy provided by statute, they are in no position thereafter to assert rights that could have been secured by such remedy by endeavoring to invoke the aid of the constitution." (13 Cal.Jur.3d (rev. 1989) Constitutional Law, § 57, p. 122, citing *Hershey* v. *Reclamation District No. 108* (1927) 200 Cal. 550, 564 [254 P 542].)

Third, we are unable to say with any degree of certainty that Plaintiff has suffered some actual harm by reason of the alleged deficient and unconstitutional notice provisions of the Probate Code. The fact remains that Plaintiff failed to avail itself of the late-claim remedy statute, section 9103. Had Plaintiff followed the procedural requirements by applying for permission to file a late claim, there is a reasonable probability that it would have been granted permission to file its claim and thus it would not have had to initiate this action.[5]

And finally, regarding Plaintiff's challenge to section 9050 that it fails to require that actual notice be given to "reasonably ascertainable" creditors,

---

[5]We find no merit to Plaintiff's contention that "[a]lthough Section 9103 . . . suggests a procedure for filing a late claim, the complexity of such a procedure, when compared with that of the mere filing of a claim, deprives that creditor of a protected property interest."

we find that section 9050, when read in conjunction with the other sections of the Probate Code, differs significantly from the statutes under attack in *Tulsa*. First, the Oklahoma statute recognized only a two-month window for submitting creditor claims, whereas section 9100 recognizes a four-month period. Next, under Oklahoma law if a creditor failed to file a claim within the two-month period, generally, it was barred forever. (*Tulsa Professional Collection Services* v. *Pope, supra,* 485 U.S. 478, 481 [99 L.Ed.2d 565, 572-573, 108 S.Ct. 1340].) California has provided a remedy for a late-filing creditor as a result of the *Tulsa* decision. (§ 9103.) And finally, unlike Oklahoma's statute, California's Probate Code specifically mandates that actual notice be sent to all known creditors. It further provides that if the personal representative's failure to give notice to a creditor was in bad faith, then he or she is liable to the aggrieved creditor. (§ 9053.)

For the above reasons, we find that the trial court correctly sustained Defendant's demurrer to the Plaintiff's Complaint. Plaintiff failed to allege facts sufficient to establish that it complied with the statutory requirements and was still denied due process. Accordingly, we affirm the judgment in favor of Defendant and against Plaintiff.

[[THE AWARD OF EXTRAORDINARY LEGAL FEES (E013717)]]*

DISPOSITION

The judgment is affirmed. [[]]*

Ramirez, P. J., and McDaniel, J.,† concurred.

A petition for a rehearing was denied April 26, 1995.

---

*See footnote, *ante,* page 1140.

†Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.