Filed 9/25/14  Cole v. Aurora Loan Services CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GEORGE J. COLE, | B252337 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. LC099800) |
| AURORA LOAN SERVICES LLC et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County. Maria E. Stratton, Judge.  Affirmed.

Law Offices of Robert D. Coppola, Jr., Robert D. Coppola, Jr., and Richard S. Singer for Plaintiff and Appellant.

McCarthy & Holthus, Melissa Robbins Coutts and Matthew B. Learned for Defendant and Respondent Quality Loan Service Corp.

Akerman, Justin D. Balser and Robert R. Yap for Defendants and Respondents Aurora Loan Services LLC and Mortgage Electronic Registration Systems, Inc.

\* \* \* \* \* \*

In this appeal, George J. Cole (appellant) challenges the trial court's dismissal of his complaint after sustaining without leave to amend demurrers to his first amended complaint for alleged violations of a settlement agreement. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In reviewing an order after a demurrer is sustained without leave to amend, all well-pleaded factual allegations must be assumed as true. (*Naegele v. R. J. Reynolds Tobacco Co.* (2002) 28 Cal.4th 856, 864-865; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) In our review of the trial court's ruling on the demurrers, "we look to the 'properly pleaded factual allegations' of the operative complaint 'read in light of' any 'judicially noticeable facts' and 'factual concessions' of the plaintiff."[1] (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 506, fn. 1; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 21.) This includes factual concessions and positions taken in earlier pleadings because a plaintiff cannot avoid a demurrer by contradicting or suppressing facts pled in the original complaint. (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1491.)

In this case, the operative pleading is the first amended complaint, which is predicated on the theory respondents wrongfully foreclosed on real property after appellant defaulted on a promissory note secured by a deed of trust. The first amended complaint contains very few facts. However, both the original and the first amended complaints contain a number of attachments which were incorporated by reference. "Where written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and

---

[1]     Both the original and the first amended complaint contained a number of factual gaps. In ruling on the demurrers to the original complaint, the trial court denied judicial notice of the documents presented by respondents, which supplied additional information. In ruling on the demurrers to the first amended complaint, the trial court granted judicial notice of certain documents presented by respondents as to their "existence and contents" but not the truth of the matters stated in the documents.

may be considered on demurrer. [Citations.]" (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800.) Below is a summary of facts taken from the first amended complaint and its attachments.

Appellant and Jesse J. Cole are the trustors of a deed of trust recorded in December 2006 against a single-family residence located in West Hills. Respondent, Mortgage Electronic Registration Systems, Inc. (MERS) is the nominal beneficiary for the original lender, First National Bank of Arizona, and lender's successors and assigns under the deed of trust. Respondent, Aurora Loan Services LLC (Aurora), is the successor in interest to the original lender to the deed of trust. Respondent, Quality Loan Service Corp. (Quality), is the substituted trustee under the deed of trust.

On June 29, 2009, a notice of default and election to sell was recorded against the property, which indicated that the original loan amount secured by the deed of trust was $650,000. A debt validation notice indicated that, as of July 10, 2009, the amount required to pay the debt in full was the unpaid principal balance of $692,856.37, plus interest from March 1, 2009, late charges, negative escrow and attorney and/or trustee's fees and costs that may have been incurred.

On October 16, 2009, appellant filed a superior court action for cancellation of trustee sale, removal of clouds on title and injunctive relief entitled *George J. Cole et al. v. Quality Loan Service Corp. et al.*, Los Angeles County Superior Court, case No. LC087270 (the underlying action). The underlying action alleged that appellant had not been given requisite statutory notices concerning the pending trustee's foreclosure sale and that there were irregularities in the substitution of trustee.

On February 17, 2010, appellant and respondents, who were all represented by counsel, entered into a settlement and release agreement. Paragraph 2 of the recitals indicates that the June 29, 2009 notice of default and election default set a sale date for October 21, 2009, which sale date was postponed to December 7, 2009. Paragraph 3 of the recitals refers to the underlying action and the claims alleged against respondents. Paragraph 4 of the recitals states: "The Parties acknowledge that a dispute currently

3

exists which they desire to settle in full pursuant to this terms of this Settlement Agreement."

Paragraph 3 of the settlement agreement is entitled "Terms of the Agreement." Paragraph 3(A) provides: "[Respondents] shall postpone the Trustee's Sale of the Property, currently scheduled for December 7, 2009 to February 19, 2010. [Appellant agrees] to vacate the Property on or before February 23, 2010." Paragraph 3(B) provides: "The property shall be left in its present condition including unfinished remodeling . . . ; [appellant] will remove personal property from the home; [appellant] agrees to leave fixtures and not to cause any intentional damage to the property; and [appellant] will maintain homeowner's insurance until he vacated the Property." Paragraph 3(C) states: "[Appellant] shall release and relinquish any and all claims that [he may have against [respondents] as a result of the allegations in [the underlying action], whether known or unknown, and shall file a Dismissal with Prejudice against the [respondents]." Paragraph 3 (D) is an attorney fee provision. There were no other terms of the settlement agreement identified in paragraph 3.

Paragraph 4 of the settlement agreement contains a mutual release provision. Paragraph 5 of the settlement agreement is an integration clause.

Paragraph 4(A) of the settlement agreement states: "In consideration of the mutual covenants herein contained and the further consideration described herein, the Parties, on behalf of themselves and their respective representatives, hereby fully release and discharge each other and their respective representatives, from any and all actions, suits in law or in equity, litigation, claims, demands or damages, of whatsoever kind or nature, anticipated or unanticipated, known or unknown, at this time or at any time prior to the date hereof which they had or may have had by reason of any act, omission or occurrence in any manner relating to, concerning, or arising out of any act, omission, by any Party to this Agreement as a result of the matters/disputes addressed herein. Nothing in this Agreement shall release the Parties from any claims relating to any acts or omissions relating to this Agreement occurring after the effective date of this Agreement."

4

In Paragraph 4(B) of the settlement agreement, the parties acknowledged and then waived the rights and benefits of Civil Code section 1542. The parties further agreed that "they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to this dispute and the subject matter of the Agreement, or that they may hereafter come to have a different understanding of the law that may apply to this dispute or to this Agreement, but they do each affirm that it is their intention to fully, finally, and forever, settle and release any and all matters, disputes, and differences, known or unknown, suspected or unsuspected, which do not exist, may hereafter exist, or heretofore have existed between them."

The trustee's sale took place on February 19, 2010. The property was sold at a public auction for $485,000 in cash. Quality subsequently deducted its fees as trustee and costs of the trustee's sale from the cash payment and forwarded the proceeds to Aurora and MERS.

In March 2010, appellant, through counsel, made on respondents written demands for the sale proceeds. Exhibit D to the first amended complaint is a demand to Quality dated March 30, 2010. The demand states in part: "It is our understanding that the property was purchased by a third party for cash. If this is correct, there should be proceeds available from the sale after payment of the adjusted beneficiaries' demands." Respondents denied that any sums were due, indicating that the debt owed on the loan at the time of the trustee's sale was $748,970.95 and the amount paid at the sale was $485,000.01.

On February 14, 2013, appellant filed a complaint against respondents, which contained 12 causes of action. The theory of the original complaint was that appellant was entitled to relief because respondents breached the mutual release provision of the settlement agreement by failing to give appellant the proceeds from the trustee's sale. The causes of action included claims for: declaratory relief, contract breach, statutory breaches, breach of good faith and fair dealing covenants, various forms of fraud and deceit, conversion and imposition of a constructive trust. Appellant alleged that Jesse J. Cole had assigned to him all rights to appellant under the settlement.

5

On May 8, 2013, the trial court sustained demurrers to the original complaint with 20 days leave to amend. The trial court ruled that the settlement agreement could not be interpreted as appellant urged. As an alternative ground for sustaining the demurrers, the trial court found appellant failed to join an indispensable party, co-borrower Jesse J. Cole, who could not assign the personal tort claims. But, in any event, the assignment only gave appellant the right to sue in the co-borrower's name.

On May 24, 2013, appellant filed a first amended complaint which contained three causes of action for: breach of contract (first, against all respondents), breach of an agent's duty (second, against Quality), and breach of covenant of good faith and fair dealing (third, against respondents). The first amended complaint alleged that respondents had made claims and demands for payment in full of the obligations under the original promissory note prior to entering into the settlement agreement. The settlement agreement was intended to release appellant's obligations under the note and deed of trust, including the demand for payment in full of the obligations under the note. There was no consideration for the settlement agreement because the trustee's sale had already been postponed from December 7, 2009, the settlement agreement was signed on February 17, 2010, and the trustee's sale took place on February 19, 2010. The mutual release governed claims in the underlying action that appellant would have had against respondents for procedural deficiencies and irregularities taken in connection with hundreds of borrowers, including appellant. This was evidenced by actions taken by the Comptroller of the Currency of the United States of America during 2011, 2012 and 2013 against Aurora for various unlawful foreclosure practices between January 1, 2009 and December 31, 2010. Appellant was identified by federal bank regulators as a borrower that may have been harmed by the practices.

The first amended complaint further alleged that, at the time of the trustee's sale in February 2010, the fair market value of the property was in excess of $600,000 but respondents set the opening sale price and made a credit bid as the beneficiary of $485,000. This allegedly was wrongful conduct because the credit bid was based on the improper claim that appellant owed at least that amount on the note when the settlement

6

agreement had extinguished the debt. Appellant also alleged that Quality breached contractual and agency obligations by honoring the claim that MERS and Aurora were entitled to the $485,000 proceeds of the sale, when the settlement agreement released the claims due under the promissory note.

In September 2013, the trial court sustained Quality's demurrer without leave to amend. Quality argued the mutual release provision cannot be interpreted to mean that appellant was entitled to the proceeds from the sale of the foreclosed property. The settlement agreement contemplated that appellant would be permitted to stay on the property until February 23, 2010, in exchange for dismissing the complaint. However, the release was limited to the prior action. The release did not discharge appellant's obligation to repay his indebtedness or extinguish the beneficiaries' right to the proceeds from the nonjudicial foreclosure sale. The trial court also sustained, without leave to amend, demurrers to the first amended complaint brought by Aurora and MERS. They had asserted, among other things, the demurrers should be sustained because appellant failed to join an indispensable party and the settlement agreement did not discharge or extinguish the $650,000 obligation. Appellant filed a timely appeal from the orders dismissing the complaint with prejudice.

## DISCUSSION

### I. Demurrer Review Standards

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory, such facts being assumed true for this purpose. [Citations.]' [Citation.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We give the complaint a reasonable interpretation by reading it as a whole and with all of its parts in their context. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) The assumption of truth does not apply to contentions, deductions, or conclusions of law and fact. (*Ibid.*) Allegations that are contrary to the law or to a fact of which judicial notice may be taken will be treated as a nullity. (*Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143; *Fundin v.*

7

*Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955.) The ruling must be affirmed if any proper ground exists for sustaining the demurrer. (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

## II. Contract Interpretation Standards

At issue here is whether the trial court properly interpreted the settlement agreement and the mutual release to mean that the action should be dismissed. The interpretation of a release is governed by ordinary rules of contract interpretation. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 528; *Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1356.) Unless it depends upon disputed facts, the construction of a contract, including ambiguities, is a question of law subject to de novo review. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912; *Sprinkles v. Associated Indem. Corp.* (2010) 188 Cal.App.4th 69, 76.)

A court interprets a contract to ascertain and give effect to the mutual intention of the parties as it existed at the time of contracting. (Civ. Code, § 1636[2]; Code Civ. Proc., § 1859[3]; *Hess v. Ford Motor Co.*, *supra*, 27 Cal.4th at p. 528.) If the parties dispute the meaning of terms, the court must determine whether the terms are ambiguous. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) A contract term is ambiguous if it is reasonably susceptible to either of the meanings suggested by the parties and is not based on a strained interpretation. (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115; *Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 737.) If the meaning of a contract is ambiguous and the interpretation depends upon the credibility of extrinsic evidence, the question is one of fact and the findings should not be disturbed by

---

[2]     Civil Code section 1636 states: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

[3]     Code of Civil Procedure section 1859 provides: "In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."

an appellate court.  (*Winet v. Price*, *supra*, 4 Cal.App.4th at pp. 1165–1166.)  In such cases, any reasonable construction of the contract is upheld if it is supported by substantial evidence.  (*Ibid.*)  The scope of a release may in some cases be a question of fact.  (*Butler v. Vons Companies, Inc.* (2006) 140 Cal.App.4th 943, 949–951; *Neubauer v. Goldfarb* (2003) 108 Cal.App.4th 47, 58–59.)  However, "[i]n the absence of extrinsic evidence, the scope of a release is determined by the express language of the release. [Citation.]"  (*Benedek v. PLC Santa Monica*, *supra*, 104 Cal.App.4th at p. 1357.)

## III.  The Demurrers

Appellant claims the trial court erred in sustaining the demurrers after improperly interpreting the settlement agreement to mean that his obligations under the note and deed of trust still existed in light of the mutual release provision.  All of appellant's claims rest on the assumptions that the settlement agreement and the mutual release must be interpreted to mean:  he had the right to the proceeds of the sale; and Aurora and MERS gave up the right to the proceeds of the sale from the nonjudicial foreclosure.  For the reasons stated below, even under a strained interpretation, we cannot construe the settlement agreement or the mutual release provision in the manner suggested by appellant.

First, recitals in the settlement agreement's recitals, as well as the paragraph 3 entitled "Terms of the Agreement," precludes such an interpretation.  Paragraph 2 of the recitals references the June 29, 2009 notice of default and election default, the original sale of  October 21, 2009, and a postponement to December 7, 2009.  Paragraph 3 of the recitals refers to the underlying action and the claims alleged against respondents as a result of the purported defective notice.  Paragraph 4 of the recitals states:  "The Parties acknowledge that a dispute currently exists which they desire to settle in full pursuant to the terms of this Settlement Agreement."  No reference whatsoever is made to a dispute about appellant's obligations under the original promissory note, his right to any proceeds from the nonjudicial foreclosure sale or the beneficiaries loss of the right to the proceeds.

Similarly, paragraph 3 of the settlement agreement, which is entitled "Terms of the Agreement," specifies the express terms of the agreement.  Notably, there is absolutely

no reference to a dispute about appellant's obligations under the original promissory note or the parties' rights to the proceeds from the nonjudicial foreclosure sale. Instead, term (A) specifies that there was a postponement of trustee's sale from December 7, 2009 to February 19, 2010. As additional terms of the agreement, appellant agreed to vacate the property by February 23, 2010, and, among other things, to dismiss the underlying action. There were no other specific terms in the settlement agreement much less any covering any disputes about appellant's obligations under the promissory note or the beneficiaries rights under the deed of trust.

Second, nothing in the mutual release provision requires a different result. By its express terms, the mutual release is limited to release and discharge of claims "relating to, concerning, or arising out of any act, omission, by any Party to *this Agreement as a result of the matters/disputes addressed herein*." (Italics added.) As previously noted, the dispute was identified as the notice of default, the postponements of the nonjudicial foreclosure, the underlying action, the foreclosure sale, and the manner and time that appellant would vacate the premises. There is simply no basis for interpreting the mutual release to mean that the beneficiaries were forfeiting their right to the proceeds of the nonjudicial foreclosure sale. This is especially true because the settlement agreement contemplates that the foreclosure sale would proceed.

Third, appellant's interpretation of the contract is inconsistent with appellant's postexecution conduct. "The conduct of the parties after execution of the contract and before any controversy has arisen as to its effects affords the most reliable evidence of the parties' intentions." (*Kennecott Corp. v. Union Oil Co.* (1987) 196 Cal.App.3d 1179, 1189.) Appellant's March 2010 demand letter indicates that he only wanted net proceeds from the nonjudicial foreclosure sale "after payment of the adjusted beneficiaries' demands."

Furthermore, appellant's interpretation of the contract to allow him to proceed with the current action based on his understanding after the foreclosure sale of the property is also inconsistent with paragraph 4(B) of the mutual release provision. In that provision, the parties agreed in part that "they may hereafter come to have a different

10

understanding of the law that may apply to this dispute or to this Agreement, but they do each affirm that it is their intention to fully, finally, and forever settle and release any and all matters, disputes, and differences, known or unknown, suspected or unsuspected, which do not exist, may hereafter exist, or heretofore have existed between them." Thus, appellant's interpretation of the agreement to allow him to raise a new theory about the proceeds of the sale is barred by the express terms of the mutual release upon which he relies.

Moreover, we disagree with appellant that the only reasonable interpretation is that the parties meant to extinguish appellant's obligations under the note as well as the beneficiaries' rights under the deed of trust because otherwise the postponements are illusory and/or lack consideration. The fact that the parties signed the settlement agreement on February 17, 2010, and the nonjudicial foreclosure sale was postponed to February 19, 2010, does not mean the settlement agreement was illusory or lacking in consideration.

In any event, we decline appellant's invitation to weigh the sufficiency of the consideration. "A written instrument is presumptive evidence of consideration." (Civ. Code, § 1614.) Courts ordinarily (and particularly when parties are represented by counsel) do not weigh the sufficiency of consideration once some value meaning "any value whatever" is found. (*Estate of Freeman* (1965) 238 Cal.App.2d 486, 488-489; see also *San Diego City Firefighters, Local 145 v. Bd. of Admin. of San Diego County* (2012) 206 Cal.App.4th 594, 619 ["all the law requires for sufficient consideration is the proverbial 'peppercorn'"].) Documents attached to the original and first amended complaints, including the settlement agreement, show that appellant defaulted on a $650,000 promissory note in March 2009. A nonjudicial foreclosure sale was originally set for October 2009, postponed to December 2009 and ultimately occurred in February 2010, two days after the settlement agreement was signed. Under the circumstances, there was some value in the two-day postponement, notwithstanding appellant's claim to the contrary. (See *Walters v. Calderon* (1972) 25 Cal.App.3d 863, 876 ["some value means any value whatsoever, even that of a peppercorn, a tomtit, or *one dollar*"].)

11

We conclude the settlement agreement can only be interpreted to mean that the mutual release did not discharge appellant's indebtedness or extinguish the beneficiaries' rights to the proceeds from the nonjudicial foreclosure sale. Therefore, the trial court properly sustained the demurrers to the first amended complaint in its entirety because all the claims are predicated on this theory.

Specifically, appellant alleged insufficient facts to establish the first cause of action for breach of contract. The elements of a breach of contract cause of action are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Appellant failed to allege sufficient facts that there was an agreement to discharge his indebtedness or to extinguish the beneficiaries' rights or that respondents breached any such agreement.

For similar reasons, the third cause of action for breach of the implied covenant of good faith and fair dealing contains insufficient facts. "The implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care. Rather, '"[t]he implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract."' [Citation.]" (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 206.) Appellant failed to state a cause of action because he failed to plead facts showing there was an agreement to discharge his indebtedness and/or extinguish the beneficiaries' rights under the deed of trust. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 525.)

The result is the same for the second cause of action for Quality's alleged violations of its statutory duties as a trustee. In California, nonjudicial foreclosure sales are governed by a comprehensive statutory scheme embodied in Civil Code sections 2924 through 2924k. (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) "The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly

conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Ibid.*; *Millennium Rock Mortgage, Inc. v. T.D. Service Co.* (2009) 179 Cal.App.4th 804, 809.)

Contrary to appellant's assertions, "[t]he trustee in a nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for trustor and beneficiary. [Citation.] The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. No other common law duties exist. [Citations.]" (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 335.) Section 2924a authorizes the trustee to conduct the sale pursuant to the terms of the deed of trust. Section 2924h regulates the manner of the sale. Section 2924h, subdivision (b) sets forth the trustee's right and duties in qualifying the bidders at the sale. Section2924h, subdivision (g) prohibits any party from fixing or restraining the bidding. Section 2924k sets forth the trustee's duties to distribute the proceeds of the sale.

Here, appellant alleged that Quality violated its statutory obligation in distributing the proceeds of the sale without regard to the settlement agreement. As we explained above, appellant alleged insufficient facts to show the settlement agreement required that the proceeds from the foreclosure sale should be distributed to him.

Appellant also alleged that Quality acted wrongfully in setting the bid at $485,000 when the value of the property was over $600,000. "However, California courts have long held that mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale." (*6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279, 1284, citing *Sargent v. Shumaker* (1924) 193 Cal. 122, 129-130, and *Crofoot v. Tarman* (1957) 147 Cal.App.2d 443, 446.) In seeking relief from the foreclosure sale, appellant alleged that the credit bid of $485,000 was well below the fair market value of over $600,000 on the date of the foreclosure sale. Despite allegations of an inadequate opening bid, the complaint does not allege any other procedural irregularities in the sale. Thus, the trial court properly sustained Quality's demurrer to

the breach of statutory duties cause of action because there were no procedural errors alleged.

In any event, after a nonjudicial foreclosure sale has been completed, the borrower's traditional method to challenge the sale is one in equity to set aside the sale. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 103.) Such a suit requires the borrower to allege tender, which appellant has failed to do. (*Ibid.*)

For all the aforementioned reasons, the trial court properly sustained respondents' demurrers to the first amended complaint.

## IV. Leave to Amend

When the complaint fails to allege sufficient facts, appellant has the burden of demonstrating how the defective pleading could be cured by amendment. (*Hernandez v. City of Pomona*, *supra*, 46 Cal.4th at p. 520, fn. 16; *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) Appellant has the burden of identifying "some legal theory or state of facts [he] wishes to add by way of amendment that would change the legal effect of [his] pleading. [Citation.]" (*Hernandez v. City of Pomona*, *supra*, at p. 520, fn. 16.) We decide whether the trial court abused its discretion in determining there was no reasonable possibility that the complaint could have been cured by amendment. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Appellant's entire complaint and arguments on appeal rest upon an unreasonable interpretation of the settlement agreement. Appellant has not shown how additional attempts to plead would cure this fundamental defect in the complaint. As a result, respondents are correct that appellant has failed to demonstrate that the trial court abused its discretion in refusing to allow further amendments to the complaint.

14

## DISPOSITION

The orders dismissing the complaint are sustained.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

CHAVEZ

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15