[No. B218417. Second Dist., Div. Five. Sept. 1, 2010.]

ROSE SPRINKLES et al., Plaintiffs and Appellants, v.
ASSOCIATED INDEMNITY CORPORATION et al., Defendants and
Respondents.

**COUNSEL**

Grassini & Wrinkle and Roland Wrinkle for Plaintiffs and Appellants.

Hager & Dowling and John V. Hager for Defendants and Respondents.

OPINION

MOSK, J.—

## INTRODUCTION

Plaintiffs and appellants Rose, Austin, and Logan Sprinkles[1] are the heirs of a motorcyclist who died in an accident caused by an employee, Juan Bibinz (Bibinz), of Sinco Co., Inc. (Sinco). Sinco had an automobile liability policy issued by General Insurance Company of America (General), an excess and umbrella policy issued by Fireman's Fund Insurance Company (Fireman's Fund), and a commercial general liability (CGL) policy issued by Fireman's Fund.[2] Plaintiffs partially settled with Sinco and Bibinz for the full policy limits under the automobile policy and the excess and umbrella policy. Fireman's Fund denied coverage under the CGL policy and, under that policy, refused to defend an action by plaintiffs against Sinco. In the partial settlement, plaintiffs, Sinco, and Bibinz agreed to arbitrate plaintiffs' claims, and plaintiffs took an assignment of Sinco's claims under the CGL policy against Fireman's Fund.

After the arbitrator's award to plaintiffs of more than $27 million, plaintiffs filed this bad faith action against Fireman's Fund. Before the trial court on a demurrer to the complaint, Fireman's Fund contended that Bibinz was an insured under the CGL policy, and therefore the exclusion in the policy for automobile accidents applied. The trial court sustained the demurrer without leave to amend, holding that the CGL policy provided no coverage for the automobile accident that caused plaintiffs' damages.

Plaintiffs assert, inter alia, that the policy definition of "insured" is not equivalent to vicarious tort liability; Bibinz was not an "insured," and therefore the automobile accident exclusion did not apply; and Fireman's Fund had a duty to defend the claim under the CGL policy because there is a potential for coverage due to the possibility that Bibinz was not an "insured" under the policy definition. In affirming the order of dismissal, we hold that under the complaint and matters judicially noticed Bibinz was an insured, rendering the automobile exclusion in the CGL policy applicable, and that Fireman's Fund had no duty to defend Sinco.

---

[1] Plaintiffs Austin and Logan Sprinkles are minors. The action is brought on their behalf by their guardian ad litem, Rose Sprinkles.

[2] Defendants and respondents Associated Indemnity Corporation and Fireman's Fund Insurance Company are affiliated insurers and are collectively referred to as Fireman's Fund.

## BACKGROUND

As this case arises from a demurrer, we set forth the following allegations in the complaint and matters of which the trial court took judicial notice.

Michael Sprinkles, the husband of Rose Sprinkles and father of Austin and Logan Sprinkles, died as a result of a motorcycle accident caused by Bibinz, an employee of Sinco. Plaintiffs filed an action against Sinco and Bibinz (the Sinco action) alleging that Sinco negligently hired Bibinz, an uninsured and undocumented alien with a lengthy criminal record, who negligently drove his vehicle causing the death of Michael Sprinkles. Plaintiffs also alleged that each of the defendants was an employee and agent of the other acting within the scope of his or its authority.

At the time of the accident, Sinco had a commercial automobile policy issued by General with a $1 million limit, an excess and umbrella policy issued by Fireman's Fund with a $1 million limit, and a CGL policy issued by Fireman's Fund with a $1 million limit. General, the auto insurer, and Fireman's Fund, the insurer of the excess over the automobile policy, agreed to provide coverage. Fireman's Fund separately denied coverage under the CGL policy.

Plaintiffs partially settled the Sinco action, with General paying its $1 million primary limit and Fireman's Fund paying its $1 million excess limit. The settlement agreement included an assignment to plaintiffs of rights that Sinco may have against Fireman's Fund, and a provision that plaintiffs would not execute on or record any judgment they obtained against Sinco or Bibinz in excess of the $2 million combined policy limits that the insurers agreed to pay. The settlement agreement also provided for an arbitration on the merits of plaintiffs' claims and that the defendants in the Sinco action had "neither the obligation nor the right to present a defense or to cross-examine witnesses," but that "the parties and their counsel [would] do everything necessary to ensure a full, fair and complete assessment and resolution of liability and damages." Plaintiff Rose Sprinkles petitioned to approve the partial settlement of the Sinco action on behalf of the minor plaintiffs.

The arbitration conducted by Judge Diane Wayne, superior court judge (ret.), resulted in an award to plaintiffs that exceeded $27 million and a finding that Bibinz was, at the time of the accident, acting within the course and scope of his employment under the "required vehicle" exception to the "going and coming" rule and that Sinco had been negligent in hiring and retaining Bibinz. The arbitrator stated that at the time of the accident, Bibinz was employed by Sinco, a property management company, to service various properties in a single day and therefore needed his automobile to visit

jobsites; he was on his way to work in the vehicle he used to go to the jobsites; and he was under the influence of drugs and driving erratically. The arbitration award was confirmed by the superior court, and a judgment was entered on that award.

Plaintiffs then filed this action for breach of the covenant of good faith and fair dealing, wrongful refusal to settle, wrongful failure to defend, and breach of the insurance contract. Plaintiffs also asserted a claim under Insurance Code section 11580 (direct right of judgment creditor against an insurer (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 68 [131 Cal.Rptr.2d 777])). Plaintiffs alleged that Bibinz was not an insured under the policy. They alleged, "At the time of the accident, Bibinz was not performing duties related to the conduct of SINCO'S business and there was a potential for a finding that Bibinz was not acting in the scope of his employment with SINCO." The complaint included as exhibits pertinent portions of the Fireman's Fund CGL policy, plaintiffs' complaint in the Sinco action, and the judgment confirming the arbitration award. The trial court took judicial notice of other filings by plaintiffs: the minors' compromise petitions for Austin and Logan Sprinkles and the petition to confirm the arbitration award, which included the settlement agreement and the arbitration award.

Fireman's Fund demurred, asserting that the complaint failed to state a cause of action. The trial court sustained Fireman's Fund's demurrer without leave to amend and entered its order of dismissal. Plaintiffs timely filed a notice of appeal.

## DISCUSSION

### A. *Standard of Review*

The standard of review on appeal following the sustaining of a demurrer is de novo. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 122 [61 Cal.Rptr.3d 221].) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; see also *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1075 [60 Cal.Rptr.2d 263, 929 P.2d 582].)

When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, it will conclude that the trial court abused its discretion by denying the plaintiff leave to amend. (*Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708, 719 [17 Cal.Rptr.3d 374].) The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976].) Plaintiffs have not sought to amend their complaint.

### B. *Interpretation of Insurance Policy*

■    Ordinary rules of contract interpretation apply to insurance policies. (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568]; see *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822 [274 Cal.Rptr. 820, 799 P.2d 1253].) In setting forth these rules, the Supreme Court stated, "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.] [¶] . . . In the insurance context, we generally resolve ambiguities in favor of coverage. [Citations.] Similarly, we generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured. [Citations.] These rules stem from the fact that the insurer typically drafts policy language, leaving the insured little or no meaningful opportunity or ability to bargain for modifications. [Citations.] Because the insurer writes the policy, it is held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage." (*AIU Ins. Co. v. Superior Court, supra,* 51 Cal.3d at pp. 821–822, fn. omitted; see *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321–322 [110 Cal.Rptr.3d 612, 232 P.3d 612]; *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390–391 [33 Cal.Rptr.3d 562, 118 P.3d 589].) When the facts are undisputed, as they are deemed to be in connection with a demurrer, the interpretation of a contract, including the resolution of any ambiguity, is a question of law. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Legacy Vulcan Corp. v. Superior Court* (2010) 185 Cal.App.4th 677, 688 [110 Cal.Rptr.3d 795]; *Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 453 [10 Cal.Rptr.3d 617]; *United Services Automobile Assn. v. Baggett* (1989) 209 Cal.App.3d 1387, 1397 [258 Cal.Rptr. 52] [ambiguity is an issue of law]; Croskey et al., Cal. Practice Guide:

Insurance Litigation (The Rutter Group 2009) ¶ 4:491, p. 4-69 (rev. # 1, 2009) (Croskey) [whether an exclusion or limitation is " conspicuous, plain and clear' " is a question of law].)

### C. Duty to Defend

■ A liability insurer has a duty to defend its insured whenever the insurer ascertains facts that give rise to the potential of liability under the policy. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275–277 [54 Cal.Rptr. 104, 419 P.2d 168].) "The insurer's duty to defend the 'insured' includes both the named insured(s) and anyone else included in the policy's definition of 'insured.' " (Croskey, *supra*, § 7:514.5, p. 7B-7 (rev. # 1, 2009); see also *Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21, 29–30 [76 Cal.Rptr.2d 113].)

The court in *Legacy Vulcan Corp. v. Superior Court, supra*, 185 Cal.App.4th at pages 692–693 provided a useful summary of requirements for a duty to defend as follows: "The facts need only 'raise the possibility' that the insured will be held liable for covered damages. (*Montrose Chemical Corp. v. Superior Court*[, *supra*, 6 Cal.4th at p. 304] . . . .) The insurer has a duty to defend even if the claims against the insured are ' "groundless, false, or fraudulent." ' (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1086 [17 Cal.Rptr.2d 210, 846 P.2d 792].) 'Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor.' (*Montrose, supra*, at pp. 299–300.) [¶] 'A duty to defend arises upon the tender to the insurer of a potentially covered claim and continues until the lawsuit is concluded or until the insurer shows that facts extrinsic to the third party complaint conclusively negate the potential for coverage. [Citations.] If a duty to defend arises, the insurer must defend the action in its entirety, including claims that are not potentially covered. [Citation.] If a duty to defend arises by virtue of the existence of a potential for coverage but is later extinguished, it is extinguished prospectively only, and not retroactively. [Citation.]' (*GGIS Ins. Services, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1493, 1505 [86 Cal.Rptr.3d 515].) Thus, the fact that the underlying actions were settled has no impact on the existence of a duty to defend if such a duty arose before the settlements. [¶] 'If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.' (*Scottsdale [Ins. Co. v. MV Transportation* (2005)] 36 Cal.4th [643,] 655 [31 Cal.Rptr.3d 147, 115 P.3d 460].)" (Fn. omitted.)

D. *The Policy*

The Fireman's Fund CGL policy had the following pertinent terms: "1. Insuring Agreement a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply."

"Section II—Who Is an Insured: [¶] . . . [¶] 2. Each of the following is also an insured: [¶] a. Your . . . employees . . . but only for acts within the scope of their employment by you while performing duties related to the conduct of your business . . . ." "[Exclusion] g. bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading. [¶] This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence which caused the bodily injury or property damage involved the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft that is owned or operated by or rented or loaned to any insured."

■ An authority stated with regard to CGL policies as follows: "The standard commercial general liability insurance policy was originally promulgated in 1940 under the title of 'comprehensive general liability.' Since that time, the standard form has undergone five principal revisions, the most recent of which came into use in 1986 at which time the name of the policy was changed from 'comprehensive' to 'commercial.' Most modern commercial general liability insurance policies in the United States are written on standardized forms which are developed by the Insurance Services Office, Inc. [¶] . . . [¶] Commercial general liability policies are designed to protect the insured against losses to third parties arising out of the operation of the insured's business. Consequently, a loss must arise out of the insured's business operations in order to be covered under the policy issued to the insured. Risks incidentally related to the operation of the insured's business will generally fall within coverage. Commercial general liability policies are not, however, strictly confined to operations performed on the insured's business premises." (9A Couch on Insurance (3d ed. 2005) §§ 129:1 to 129:2, pp. 129-5 to 129-9, fns. omitted.) Generally, CGL policies exclude bodily injury arising out of the use of automobiles. (See Stempel, *Assessing the Coverage Carnage: Asbestos Liability and Insurance After Three Decades of Dispute* (2006) 12 Conn. Ins. L.J. 349, 358; 9 Couch on Insurance (3d rev.

ed. 2008) § 122:33; ISO Properties, Inc., Commercial General Liability CG 00 01 12 07, 2006 Form Policy, § I2.g.; 1 Miller & Lefebvre, Miller's Standard Insurance Policies Annot. (5th ed. 2007) p. 403.)[3]

### E. *Interpretation and Application of the Policy*

#### 1. *Plaintiffs' Contentions*

Under the CGL policy, the definition of insured includes employees, "but only for acts within the scope of their employment while performing duties related to the conduct of your business." Plaintiffs assert that this provision is unusual, as most CGL policies separate with a disjunctive the two conditions—scope of employment and performing business-related duties. (See ISO Properties, Inc., Commercial General Liability CG 00 01 12 07, *supra*, § II2.a.; 1 Miller & Lefebvre, Miller's Standard Insurance Policies Annot., *supra*, at pp. 402.0 to 402.1.) Here, the policy only covers acts of employees "within the scope of their employment . . . while performing duties related to the conduct of [Sinco's] business." Plaintiffs assert that the latter phrase limits or is an added condition to the "within the scope of employment" condition. According to plaintiffs, the two conditions are not identical. Thus, according to plaintiffs, Fireman's Fund narrowed the definition of "insured"; it thereby narrowed the scope of its automobile exclusion. Although the arbitrator concluded that Sinco was liable under a respondeat superior theory because Bibinz was acting within the scope of his employment, the insurance policy language is different from the requirement for establishing respondeat superior. Accordingly, plaintiffs contend that there is a potential for finding that Bibinz was not an insured—i.e., was not an employee acting within the scope of his employment "while performing duties related to the conduct" of Sinco's business when he was driving to work.

The arbitrator found that "Bibinz was on his way to work in a vehicle that was used to transport him from job to job in a single day at the direction of his employer, Sinco. . . . While working in maintenance for Sinco, Bibinz visited various sites around the county. . . . His employment demanded he transport himself between various job sites." The arbitrator concluded that Sinco was vicariously liable because the acts of Bibinz were within the "course and scope" of his employment by virtue of the "required vehicle" exception to the "going and coming" rule.[4] (See *Hinojosa v. Workmen's Comp.*

---

[3] Most insurance carriers use the basic Insurance Services Office, Inc. (ISO), forms, at least as a starting place. ISO is a nonprofit trade association providing services to insurers. (See *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 671, fn. 13 [42 Cal.Rptr.2d 324, 913 P.2d 878].)

[4] "Under the so-called 'going and coming rule,' an employee is not regarded as acting within the scope of his employment while going to or coming from his place of work. . . . [¶] . . . [¶]

*Appeals Bd.* (1972) 8 Cal.3d 150, 160–161 [104 Cal.Rptr. 456, 501 P.2d 1176] [required vehicle exception]; *Smith v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814, 820 [73 Cal.Rptr. 253, 447 P.2d 365] ["employer's requirement that the worker furnish a vehicle of transportation on the job curtails the application of the going and coming exclusion"]; *Robinson v. George* (1940) 16 Cal.2d 238, 245–246 [105 P.2d 914] [business errand exception to "going and coming" rule]; *Lobo v. Tamco* (2010) 182 Cal.App.4th 297, 301 [105 Cal.Rptr.3d 718] [" 'required-vehicle' exception"].)

In plaintiffs' complaint against Sinco, which was incorporated into their complaint in this action, plaintiffs alleged defendants Sinco and Bibinz were acting as agents of each other and within the scope and course of their authority. Plaintiffs did not deny that because of the "required vehicle" exception to the "going and coming rule," Bibinz was acting within the course and scope of his employment.[5] Plaintiffs argue that "while Bibinz was considered, for purposes of tort liability, to be in the course and scope of his employment by virtue of the 'required vehicle' exception to the 'going and coming' rule, he was, for purposes of insurance coverage, *on his way* but *had not yet gotten there, to* 'perform[] duties related to the conduct of [Sinco's business].' "

Plaintiffs also argue Fireman's Fund knew at the outset of the Sinco action that Bibinz was on his way to work at the time of the accident and that Sinco and Fireman's Fund were unaware of any facts that would result in an exception to the "going and coming" rule. In judicially noticed declarations in support of the petition for approval of the partial settlement of the Sinco action, plaintiffs' attorneys asserted, "We launched a massive investigation to support an exception to the 'going and coming rule.' " According to plaintiffs, at the inception of the Sinco action, Bibinz was not an insured because he did not satisfy the "scope of employment condition." Thus, plaintiffs contend that, at least potentially, the automobile exclusion would not apply, and therefore, Fireman's Fund also owed Sinco a duty under the CGL policy to defend on this basis.

### 2. *Insured*

The plain language of the exclusion for bodily injury or property damage "arising out of the . . . use . . . of any . . . acts by any insured," bars all of plaintiffs' claims because Bibinz was an insured under the policy. The

---

The 'going and coming' rule has . . . been held inapplicable . . . where the employer requires an employee to furnish a vehicle of transportation on the job." (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 722–723 [159 Cal.Rptr. 835, 602 P.2d 755], citations omitted.)

[5] Plaintiffs are not collaterally estopped by the arbitration award. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828–838 [88 Cal.Rptr.2d 366, 982 P.2d 229].)

allegations of the complaint and matters judicially noticed establish that Bibinz was acting within the scope of his employment while performing duties related to the conduct of the business, and thus he was an insured.

■ It is difficult to conceive of activities within the course and scope of employment that would not constitute duties *related* to the conduct of the business. (See *Artukovich v. St. Paul-Mercury Indem. Co.* (1957) 150 Cal.App.2d 312, 323 [310 P.2d 461] [no distinction between " 'engaged in the employment' " and " 'arising out of and in the course of his employment' "].) If an employee's act of driving his own vehicle to work was not covered by the "going and coming" rule because the employer required the employee to use his vehicle in the conduct of his business, and thus such use of the vehicle was within the scope and course of the employment, then driving the vehicle to work would be a duty "related" to the conduct of the business. Plaintiffs assert that driving the vehicle to work precedes engaging in the conduct of business. But plaintiffs overlook the words "related to." The Supreme Court in *Hinojosa v. Workmen's Comp. Appeals Bd., supra*, 8 Cal.3d 150, held that when an employee was required to use his own vehicle to go to various worksites, the use of the vehicle not provided by the employer was a requirement of employment. In *Smith v. Workmen's Comp. App. Bd., supra*, 69 Cal.2d at page 820, the Supreme Court said that in such situations, "the employer clearly benefited from [the employee's] bringing the car to work." Sinco benefited from Bibinz bringing his vehicle to work for use in the business. Only when the activities are purely personal should they not be considered related to the conduct of the business (see *National American Ins. Co. v. Breaux* (E.D.Tex. 2005) 368 F.Supp.2d 604, 618–619). That is not the situation present here.

Plaintiffs attach significance to the words "conduct of" in the phrase "related to the conduct of [the insured's] business." If an employee's activity is not purely personal, it is related to the conduct of the business. Even if the words "conduct of" somehow limit the meaning of the phrase, that does not assist plaintiffs. Here, Bibinz's use of the vehicle was "related to" the requirement to use the vehicle to reach various locations for maintenance work—the conduct of the business.

■ If the language of the policy is ambiguous, that ambiguity should be construed against the party that caused it—the insurer—in order to protect the reasonable expectations of the insured as to coverage. (*Forecast Homes, Inc. v. Steadfast Ins. Co.* (2010) 181 Cal.App.4th 1466, 1475 [105 Cal.Rptr.3d 200].) Here, the ambiguity would be resolved in favor of a more expansive reading of the term "insured." "The exclusion ['. . . bodily injury arising out of and in the course of employment'] is strictly construed against the insurer and in favor of the insured in order to protect the insured's reasonable expectation of

coverage." (1 Cornblum, Cal. Insurance Law Dictionary and Desk Reference (2010 ed.) § C129:2.1, p. 978.) It is true that our interpretation of the policy expands the application of the automobile exclusion, and thus in this case limits coverage. But it makes no sense to interpret broadly "insured" when an automobile is not involved and to read narrowly that word when an automobile exclusion might be applicable. (See *Mez Industries, Inc. v. Pacific Nat. Ins. Co.* (1999) 76 Cal.App.4th 856, 869 [90 Cal.Rptr.2d 721] ["Such an evaluation of an insured's *objectively* reasonable expectations under that criteria may result in a restriction of coverage rather than an expansion. [Citation.] An insured will not be able successfully to claim coverage where a reasonable person would not expect it."]; *Sequoia Ins. Co. v. Royal Ins. Co. of America* (9th Cir. 1992) 971 F.2d 1385, 1390 ["we assume without deciding that an insured's reasonable expectations may be considered to restrict rather than to expand coverage"].) Moreover, here the insured had an automobile liability policy. It would therefore not seem that the insured had a reasonable expectation that its CGL policy would provide coverage for automobile liability.

██ In arguing that the course and scope of employment provision has been limited, plaintiffs suggest that if the phrase "performing duties related to the conduct of [the] business" is broader than or the same as acts within the course and scope of employment, the phrase would be surplusage and have no meaning, and thus such an application would be contrary to rules of interpretation. (*ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1785 [22 Cal.Rptr.2d 206]; see Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."].) But "[t]he character of a contract is not to be determined by isolating any single clause or group of clauses . . . ." (*Transportation Guarantee Co. v. Jellins* (1946) 29 Cal.2d 242, 247 [174 P.2d 625].) Rather, the entire agreement must be read as a whole. Moreover, the rule that rendering part of an agreement as surplusage should be avoided emanates from Civil Code section 1641 (see *Thackaberry v. Pennington* (1955) 131 Cal.App.2d 286, 297 [280 P.2d 165]), but is only applied "if reasonably practicable" (Civ. Code, § 1641).

Perhaps it is theoretically possible that the actions of an employee may be within the course and scope of employment but not related to the conduct of the business, although we have said that this is difficult to conceive. But, as stated above, the existence of such a possibility is not present here. If Bibinz's use of his own vehicle required by Sinco to drive to various locations was within the course and scope of the business, then driving that vehicle to work was at least performing a duty "related" to the conduct of business. If the employee did not drive his automobile to work, he would not be able to drive the automobile to various other locations, as required.

■ Thus, Bibinz was an insured under the policy, and, as a result, the automobile exception applied. That exception also covered claims for negligent hiring and negligent retention. Plaintiffs therefore failed to state a cause of action for breach of the covenant of good faith and fair dealing, breach of the insurance contract, direct action under Insurance Code section 11580, and wrongful refusal to settle.

### 3. *Duty to Defend*

■ The CGL policy provides that Fireman's Fund "will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply." Our interpretation of the insurance agreement establishes that the insurer had no duty to defend. There are no disputed facts. When the duty to defend depends on the facts in the complaint, and the resolution of a legal issue establishes no potential for liability, there is no duty to defend. (*Waller v. Truck Ins. Exchange, supra,* 11 Cal.4th at pp. 25–26, citing with approval *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1152 [29 Cal.Rptr.2d 559].) Here coverage, or lack thereof, depended upon the interpretation of the policy—a legal question.

Plaintiffs argue that Fireman's Fund had a duty to defend because at the outset of the Sinco action, there was a potential that the "going and coming rule" would apply. At the time plaintiffs filed their complaint in the Sinco action, plaintiffs alleged, in effect, that Bibinz was the agent of Sinco and acting within the course and scope of his authority. Based on that allegation, Fireman's Fund had no duty to defend under the CGL policy. (See *Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th at p. 295 [" 'determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy' "].) As we have discussed, the phrase "related to the conduct of [insured's] business" does not add any further requirement to be an insured that would be applicable in this case.

Plaintiffs argue that the extraneous facts showed that Bibinz was on his way to work and that there was a potential for a finding that the "going and coming" rule would apply, thereby excluding Bibinz from having done the act in the course and scope of his employment. This, in turn, would mean the automobile exclusion would not apply. Thus, according to plaintiffs, at the time of the Sinco action, there was a potential for coverage.

But, at the relevant times, the judicially noticed extraneous facts also showed that the "required vehicle" exception to the "going and coming" rule applied. Plaintiffs claim they had to undertake a "massive investigation" to

develop the "required vehicle" exception. There is no allegation in the complaint in the instant action that the insurer at some point had the impression that the "going and coming" rule applied. Indeed, the insured, Sinco, as the employer, knew the facts that established the exception, and these facts confirmed what plaintiffs had alleged in the underlying complaint—that Bibinz was acting within the course and scope of his employment. Plaintiffs did not allege what information Fireman's Fund had at the time of the tender of the defense, other than that which they attached to their complaint. That attachment included the underlying complaint in the Sinco action, which complaint included the allegation that Bibinz was acting within the course and scope of his employment. In addition, the arbitration award that was judicially noticed confirmed that Bibinz was acting in a manner that made him an insured. Accordingly, the complaint and the matters that were judicially noticed legally support Fireman's Fund's position that it had no duty to defend.

Plaintiffs cite *Safeco Ins. Co. of America v. Parks* (2009) 170 Cal.App.4th 992 [88 Cal.Rptr.3d 730] in support of their position that Sinco was not provided with an effective defense or motivated counsel after policy limits from the other policies were paid. The court in *Safeco* held, inter alia, that when two insurers owe the insured a duty to defend, a defense by one does not excuse the other's failure to defend if the latter's policy limits greatly exceed the former's limits. (*Id.* at pp. 1004–1005.)[6] In that case, the insurer rejected the defense of a claim under a homeowners policy, and an award against the insured was rendered before the insurer discovered there was potential coverage under a renter's policy. (170 Cal.App.4th at pp. 1008–1009.) Thus, the court's holding concerning whether a defense provided by one insurer excuses another insurer's failure to defend was premised on the *existence of potential coverage* of the claim, albeit based on a policy other than the one under which the defense was tendered. That holding has no application to a case such as this one in which there was potential coverage and a defense under other policies, but *no potential coverage* of the claim under the CGL policy issued by Fireman's Fund. Based on the undisputed facts set forth in the complaint and judicially noticed matters, Fireman's Fund was justified in rejecting the defense tendered under the CGL policy. (See Croskey, *supra*, §§ 7:526, 7:586, pp. 7B-12, 7B-29 (rev. # 1, 2009).)[7]

---

[6] (See also *Risely v. Interinsurance Exchange of the Automobile Club* (2010) 183 Cal.App.4th 196, 201 [107 Cal.Rptr.3d 343] ["mere fact that the insurer provided its insured with a defense under one policy does not necessarily insulate the insurer from liability for its alleged breach of the duty to defend and settle under a second policy"].)

[7] Because of our conclusion, we do not have to reach other issues raised by the parties.

## DISPOSITION

The order of dismissal is affirmed. Fireman's Fund is awarded its costs on appeal.

Turner, P. J., and Kriegler, J., concurred.