Filed 9/20/13  McMillin Mgt. Services v. State Farm Gen. Ins. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MCMILLIN MANAGEMENT SERVICES, LP, et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STATE FARM GENERAL INSURANCE COMPANY, <br><br> Defendant and Respondent. | D062178 <br><br><br> (Super. Ct. No. 37-2011-00084376 CU-IC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Reversed.

Law Offices of Greg J. Ryan and Greg J. Ryan for Plaintiffs and Appellants.

Hughes & Nunn, Randall M. Nunn and E. Kenneth Purviance for Defendant and Respondent.

I.

INTRODUCTION

State Farm General Insurance Company (State Farm) issued a contractor's policy (the State Farm Policy) to DeLeon Enterprises (DeLeon), a company that installs rain gutters. DeLeon entered into a subcontract with appellant and general contractor, Central Valley Residential Builders, LP (Central Valley), to install rain gutters on residences that Central Valley was constructing. As required by the subcontract, DeLeon procured additional insured endorsements on the State Farm Policy in favor of Central Valley and various related entities, including appellants McMillin Management Services, LP and Bakersfield Residential Builders, LP. The subcontract named McMillin Management Services, LP as the "project manager" with respect to the construction of the residences and indicated that Central Valley is a "Corky McMillin Company."[1]

A group of homeowners filed a construction defect lawsuit against McMillin. After State Farm refused McMillin's request to defend it in the construction defect lawsuit, McMillin brought this action against State Farm, asserting claims for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing. State Farm filed a motion for summary judgment and/or adjudication on the ground that it did not owe McMillin a duty to defend the underlying lawsuit, and that all of McMillin's causes of action were premised on the existence of such a duty. After issuing a tentative

---

[1]    We refer to appellants Central Valley, McMillin Management Services, LP, Corky McMillin Construction Services, Inc., and Bakersfield Residential Builders, LP collectively as "McMillin."

order denying State Farm's motion in its entirety, the trial court granted the motion for summary judgment and entered judgment in favor of State Farm. On appeal, McMillin contends that the trial court erred in concluding that State Farm established as a matter of law that it did not owe McMillin a duty to defend the construction defect lawsuit.

Whether an insurer owes its insured a duty to defend a third party's lawsuit depends, in the first instance, on a comparison of the allegations of the third party's complaint and the terms of the insured's policy. If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises.

In the operative complaint in the underlying lawsuit, the homeowners alleged that their residences had "drainage defects" that "resulted in damage to the homes and their component parts." The State Farm Policy provided liability coverage to McMillin for resulting property damage arising out of DeLeon's work installing rain gutters. Because the purpose of rain gutters is to provide drainage, we conclude that the homeowners' complaint suggested a claim that was potentially covered by the State Farm Policy. We therefore conclude that the trial court erred in its determination that State Farm established that it did not owe McMillin any duty to defend the underlying action. Accordingly, we reverse the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Housing Developments*

Between 2003 and 2005, McMillin acted as the developer and general contractor for the construction of two single-family housing developments in Bakersfield (the Housing Developments).  One of the McMillin entities, Central Valley, entered into a subcontract with DeLeon to install rain gutters, downspouts, and splash blocks on the residences.  The subcontract required DeLeon to name McMillin as an additional insured on DeLeon's general liability insurance policy.  Pursuant to the terms of the subcontract, DeLeon procured endorsements from State Farm naming McMillin as an additional insured on the State Farm Policy.

B.     *The State Farm Policy*

The liability insuring clause of the State Farm Policy provides in relevant part:

> "We will pay those sums that the insured becomes legally obligated
> to pay as damages because of . . . property damage . . . to which this
> insurance applies."

The State Farm Policy also provides, "We will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent."

The State Farm Policy contains "work product" exclusions that limit coverage under the policy.  Those exclusions provide in relevant part:

> "[T]his insurance does not apply:

> "[¶] . . . . [¶]

4

"12. [T]o property damage to your product arising out of it or any part of it . . . ;

"13. [T]o property damage to your work arising out of it or any part of it . . . ."

The term "your product" includes any products "handled, distributed or disposed of" by DeLeon. The term "your work" is defined as "work or operations performed by [DeLeon] or on [its] behalf; and [¶] . . . materials, parts, or equipment furnished in connection with such work or operations."[2]

The State Farm Policy also includes additional insured endorsements providing coverage to McMillin for liability "arising out of" DeLeon's work.

C.      *The underlying construction defect lawsuit*

In January 2009, a group of homeowners in the Housing Developments filed a complaint for damages against McMillin alleging defects in the construction of their residences.[3]  The original complaint contains the following allegations:[4]

---

[2]      It is undisputed that in light of the work product exclusions, the State Farm Policy did not provide coverage for damage to the rain gutters themselves.  Rather, coverage was limited to property damage *other* than to the rain gutters, caused by DeLeon's work, sometimes referred to in insurance law as "resultant property damage" or "consequential property damage."  (*Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1379, fn. 1 (*Monticello*) ["The Essex policy[, which provided liability insurance to an installer of drywall,] contained an exclusion which precluded coverage for the insured's defective work.  Thus, coverage was limited to consequential property damage or resultant property damage, that is to say, damage to work other than the drywall caused by the defective work of the insured."].)

[3]      State Farm and appellants proceeded in both the trial court and in this court as though all of the appellants were named as defendants in the underlying action.  Although

5

"16. At the time of the purchase by Plaintiffs, the PROPERTY was defective and unfit for its intended purposes because Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, *numerous defects which have resulted in damage to the homes and their component parts*. The defects include, without limitation and to various degrees on the plaintiffs' respective residences, the following:

"Faulty soil compaction, faulty existing underlying soils and expansive soils resulting in soil movement and damage to the structures, concrete slabs, flatwork and foundation defects; plumbing defects; electrical defects; *drainage defects*; *roof defects*; HVAC defects; waterproofing defects; window and door defects; landscaping and irrigation defects; framing, siding and structural defects; ceramic tile, vinyl flooring and countertop defects; drywall defects; fence and retaining wall defects; cabinet and wood trim defects; fireplace and chimney defects; tub and shower door defects; painting defects; sheet metal defects; and stucco defects." (Italics added.)

In December 2009, McMillin requested that State Farm defend the action on its behalf. McMillin provided State Farm with various documents supporting that request, including a copy of the operative second amended complaint. State Farm wrote a letter to McMillin's counsel acknowledging McMillin's tender of the defense and stating that State Farm was considering whether "we have a duty to provide a defense to your clients." State Farm further stated, "The basis of the action does not include any specific allegations that our insured caused the alleged defects." Shortly thereafter, State Farm

---

it is unclear whether the complaint in the underlying action in fact named all of the appellants as defendants, we will proceed as though it did.

4       The first and second amended complaints also contain these allegations.

6

obtained a copy of the subcontract between DeLeon and Central Valley pertaining to DeLeon's installation of rain gutters on the Project.[5]

Throughout 2010, McMillin continued to request that State Farm provide it with a defense in the action. On several occasions, McMillin provided State Farm with additional evidence pertaining to alleged damages to the residences in the Housing Developments that McMillin contended supported its request for a defense. State Farm continued to refuse to defend the action on the ground that none of the information provided by McMillin suggested that DeLeon had caused damage that was covered by the State Farm Policy.

In March 2011, State Farm's coverage counsel sent a letter to McMillin's counsel reiterating that "State Farm is advising you that it will not be participating in the defense of your clients at this time."

D. *This action*

1. *The operative first amended complaint*

In February 2011, McMillin filed a first amended complaint against a number of insurance companies, including State Farm, alleging causes of action for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing. Although the original and first amended complaints are not contained in the record, it is undisputed that all of McMillin's causes of action against State Farm are premised on its

---

[5]     In support of its motion for summary judgment, State Farm offered the declaration of the claims representative who handled McMillin's claim. The declaration states that State Farm obtained the DeLeon subcontract, and suggests that it did so sometime in December 2009 or January 2010.

7

contention that State Farm breached its duty to defend McMillin in the underlying lawsuit.

2.   *State Farm's motion for summary judgment and/or adjudication*

a.   *State Farm's motion*

State Farm filed a motion for summary judgment and or/adjudication.[6]  In its supporting brief, State Farm contended that McMillin would be unable to establish that State Farm owed McMillin a duty to defend the underlying lawsuit.  State Farm argued further that it was entitled to summary judgment because each of McMillin's causes of action depended on the existence of such a duty.

State Farm acknowledged that in light of the applicable provisions of the State Farm Policy, State Farm would have had a duty to defend McMillin if the underlying action had sought to impose liability on McMillin for damages to property (other than rain gutters) arising out of DeLeon's work.  State Farm contended that it owed no such duty to defend because the underlying action did not contain any allegations asserting such liability, reasoning:

> "It is not enough for [McMillin] to simply raise the possibility of such damage.  Rather, they must identify specific allegations or extrinsic evidence linking DeLeon's work to damage to other property."

State Farm argued further that the complaints in the underlying action contained "no allegations whatsoever of any defective work performed by DeLeon, let alone any

---

6   In its motion, State Farm requested that in the event that the court were to deny its motion for summary judgment, the court summarily adjudicate that it owed no duty to defend McMillin in the underlying action.

8

property damage arising out of such work." State Farm also maintained that none of the extrinsic evidence presented either at the time of McMillin's initial tender, or in the ensuing months, established the existence of a duty to defend.

State Farm supported its motion with the declarations of two State Farm employees who had participated in the handling of McMillin's claim. State Farm also lodged the relevant State Farm Policy, the original and amended complaints in the underlying action, and various portions of its claim file, including the DeLeon subcontract and documents pertaining to the homeowners' claims in the underlying construction defect litigation.

b.      *The opposition*

McMillin filed an opposition in which it argued that the complaints in the underlying action demonstrated the possibility of coverage under the State Farm Policy, and thus, a concomitant duty on the part of State Farm to defend the action. McMillin noted that the original complaint, as well as the first and second amended complaints in the underlying action, alleged that "drainage defects" had "resulted in damage to the homes and their component parts." McMillin also noted that State Farm was aware of "DeLeon's scope of work requiring it to install rain gutters under existing metal roof flashing in a manner to ensure a watertight seal."

McMillin argued that in light of State Farm's knowledge of DeLeon's scope of work and the allegations in the complaints in the underlying action relating to drainage defects, State Farm had "utterly failed to meet its burden of presenting undisputed facts that conclusively eliminated a potential for covered liability . . . ." McMillin maintained

9

that the allegations demonstrated that "it was possible that defective work performed by DeLeon may have caused property damage, other than to its own work product."

        c.     *The trial court's ruling and the appeal*

After State Farm filed a reply, the trial court issued a tentative ruling denying the motion for summary judgment. In its ruling the court stated, "The Court finds defendant State Farm failed to establish it had no duty to defend plaintiff [against] the underlying complaint."

The court held a hearing on the motion. At the hearing, State Farm's counsel argued that none of the complaints in the underlying action used the word "gutter" or referred to property damage arising out of the installation of gutters. State Farm's counsel argued that under *Monticello, supra,* 162 Cal.App.4th 1376, the plaintiffs in the underlying case were required to "allege something specific" and that State Farm was not required "to speculate that the broad allegations in this complaint that don't mention gutters, don't mention DeLeon, are enough to extend to DeLeon . . . ."

McMillin's counsel argued that State Farm could establish that it lacked a duty to defend only if it could demonstrate " 'that the underlying complaint and extrinsic facts known [by State Farm] can by no conceivable theory raise a single issue which could bring it within policy coverage." Counsel argued further that no such showing was possible in this case in light of allegations in the underlying complaint that the homes had "drainage defects," "roof defects," and "waterproofing defects," and that State Farm knew that DeLeon "had a scope of work that included installing gutters underneath roof flashing."

10

The court took the matter under submission and subsequently issued an order granting the motion for summary judgment. In its order, the court stated:

> "The Court finds, as a matter of law, that defendant State Farm established it had no duty to defend [McMillin] in the underlying complaint [*sic*]. (*Monticello,* [*supra,* 162 Cal.App.4th 1376].) [¶] Since State Farm had no duty to defend McMillin, the remainder of [McMillin's] complaint alleged against State Farm is dismissed."

McMillin filed a motion for reconsideration on the ground that the trial court's order granting summary judgment was deficient in that it failed to adequately "specify the reasons for [the court's] determination." (Code. Civ. Proc., § 437c, subd. (g).)

The court issued a revised minute order in which it clarified the basis for its decision to grant the motion for summary judgment. The following month, the court entered a formal order granting the motion for summary judgment. The court's formal order relies on the reasons provided in the prior minute orders, and states in relevant part:

> "Based on the undisputed facts, the court finds that the Underlying Action did not assert a potential claim against [McMillin] for damages covered under the terms of the State Farm Policy. . . . [T]he court finds that the original and amended complaints [in the underlying action] do not allege facts that evidence a potential claim against [McMillin] for property damage arising out of DeLeon's work. (See [the complaints in the underlying action]; [*Monticello, supra,* 162 Cal.App.4th at pp. 1386-1387].) The court also finds that facts extrinsic to the original and amended complaints do not evidence a potential claim against [McMillin] in the Underlying Action for property damage arising out of DeLeon's work to property other than Deleon's own work or product. . . . Absent a duty to defend, [McMillin's] causes of action against State Farm for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing must necessarily fail."

Approximately a week later, the trial court entered judgment in favor of State Farm. McMillin timely appealed from the judgment.

11

III.

DISCUSSION

*The trial court erred in granting summary judgment in favor of State Farm*

McMillin claims that the trial court erred in concluding that State Farm did not owe McMillin a duty to defend the underlying action and in granting summary judgment in favor of State Farm on this basis.

A.      *Governing law*

1.      *The law governing summary judgment*

A moving party is entitled to summary judgment when the party establishes that it is entitled to the entry of judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of all of his causes of action, or that the defendant has a complete defense to each cause of action.  (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

In reviewing a trial court's ruling on a motion for summary judgment, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.  [Citations.]'  [Citation.]"  (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.)

2. *Substantive law governing the duty to defend*

It is well established that "[t]he insurer's duty to defend is broader than its duty to indemnify." (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 547.) "The . . . duty [to indemnify] runs only to claims that are actually covered by the policy, while the duty to defend extends to claims that are merely potentially covered. [Citations.]" (*Ibid.*)

Whether an insurer has a duty to defend "depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. [¶] . . . [¶] . . . If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, *suggest a claim potentially covered by the policy*, the insurer's duty to defend arises and is not extinguished until the insurer *negates all facts suggesting potential coverage*. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654–655 (*Scottsdale*), italics added.)

"Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor. [Citations.]" (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299-300 (*Montrose*).) A court may conclude that no duty to defend exists only where the underlying complaint " '*can by no conceivable theory raise a single issue which would bring it within the policy coverage*.' " (*Ibid.*, quoting *Gray v. Zurich Insurance Co*. (1966) 65 Cal. 2d 263, 275, fn. 15, italics added in *Montrose*.) "Facts merely tending to show that the claim is not covered, or may not be covered, but

13

are insufficient to eliminate the possibility that resultant damages . . . will fall within the scope of coverage, therefore add no weight to the scales." (*Montrose*, *supra*, at p. 300.)

" ' "A duty to defend arises upon the tender to the insurer of a potentially covered claim and continues until the lawsuit is concluded or until the insurer shows that facts extrinsic to the third party complaint conclusively negate the potential for coverage. [Citations.]  If a duty to defend arises, the insurer must defend the action in its entirety, including claims that are not potentially covered.  [Citation.]"  . . .  [Citation.]' . . . [Citation.]"  (*Sprinkles v. Associated Indemnity Corp*. (2010) 188 Cal.App.4th 69, 77; see also *Crawford v. Weather Shield Mfg., Inc., supra,* 44 Cal.4th at p. 547 [" 'The [insurer's] defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded [citation], or until it has been shown that there is no potential for coverage . . . .'  [Citation.]"].)

B.   *The trial court erred in concluding that State Farm established that it had no duty to defend McMillin in the underlying action*

McMillin contends that the allegations in the operative complaint in the underlying action suggested a claim that was potentially covered by the State Farm Policy.

1.   *The homeowners' second amended complaint suggested a claim that was potentially covered by the State Farm Policy*

In light of the case law described above, State Farm was entitled to summary judgment only if could establish as a matter of law the absence of any potential for coverage of McMillan under the State Farm Policy with respect to the claims asserted in the underlying action.  The allegations of the operative complaint in the underlying

14

action, when considered in connection with the nature of DeLeon's scope of work, prevent State Farm from carrying this heavy burden.

We begin our analysis by examining the terms of the State Farm Policy. The State Farm Policy required State Farm to indemnify McMillin for sums that McMillin became legally obligated "to pay as damages because of . . . property damage . . . to which this insurance applies." The applicable work product exclusions and additional insured endorsements provide that the insurance applies to property damage that arises out of DeLeon's work, other than DeLeon's work itself. Given the applicable provisions of the State Farm Policy, State Farm owed a defense to McMillin if the underlying action potentially sought to impose liability on McMillin for property damage to the homeowners' residences (other than to the gutters themselves) arising out of DeLeon's work.[7]

In their complaints in the underlying lawsuit, including the operative second amended complaint, the homeowners alleged that their residences had "drainage defects" that "resulted in damage to the homes and their component parts."

DeLeon's scope of work required it to install gutters on the homes. A gutter is a "metal trough . . . to catch rainwater and carry it off (as to a downspout)." (Webster's 3d New Internat. Dict. (2002) p. 1013.) DeLeon's subcontract required it to "[p]lace gutter[s] up and under the existing metal roof flashing to produce a water-tight

_____

[7]     In its brief in support of its motion for summary judgment, State Farm acknowledged that, "State Farm would . . . owe a defense to the McMillin Entities if the underlying action asserted liability on their part for damages to property (other than gutters) arising out of DeLeon's work."

15

installation," and to "[i]nstall a splash block at each down spout location to drain water away from the house."

Given that the homeowners' second amended complaint alleged *drainage* defects that resulted in damage to the homes, and DeLeon's scope of work required it to install a component on the homes designed to provide *drainage*, we conclude that the homeowners' second amended complaint suggested a claim that was potentially covered by the State Farm Policy. Accordingly, the trial court erred in concluding that State Farm established that it did not owe McMillin a duty to defend the underlying action.

State Farm's arguments to the contrary are not persuasive. State Farm notes that during the litigation of the underlying action, the homeowners amended their complaint to name 17 other subcontractors as defendants in the action, but never named DeLeon as a defendant. State Farm contends, "This, alone, should be enough to establish that the homeowners never sought recovery against [McMillin] for property damage arising out of DeLeon's work." We disagree. The fact that the homeowners did not sue DeLeon *directly* clearly does not establish that the homeowners were not seeking recovery against *McMillin* for property damage arising out of DeLeon's work. Indeed, the homeowners' cause of action against McMillin alleging "drainage defects" that "resulted in damage to the homes and their component parts" incorporated another allegation that stated, "In order to build and construct said project the DEVELOPER DEFENDANTS [, including McMillin,] hired, retained, employed or contracted with persons or entities to provide labor and materials in the construction of the PROPERTY and project(s)." Thus, the fact that, for whatever reason, the homeowners elected not to sue DeLeon *directly*, does not

16

mean that the homeowners did not seek to impose liability on *McMillin* for property damage arising out of DeLeon's work.

State Farm also notes that the operative complaint does not "mention rain gutters," or allege that rain gutters "caused any resulting property damage." That much is true. However, the operative complaint *does* contend that *drainage* defects caused resultant property damage. For the reasons stated above, allegations that drainage defects caused resultant property damage at least *suggest* the possibility that the installation of a component on the homes designed to facilitate drainage (i.e. rain gutters) caused resultant property damages. The homeowners' allegations thus "suggest[ed] a claim potentially covered by the policy." (*Scottsdale, supra,* 36 Cal.4th at pp. 654–655.)[8]

State Farm contends that "the same type of broad interpretation [of the operative complaint in the underlying action] proposed by [McMillin] was considered and rejected by the court in *Monticello*[, *supra*, 162 Cal.App.4th at page 1387]." However, *Monticello* is distinguishable. In *Monticello*, the Court of Appeal considered whether an insurer had a duty to defend a general contractor against construction defect claims as an additional insured pursuant to a policy issued to a subcontractor that had installed drywall on the property at issue in the construction defect action. (*Monticello, supra*, at p. 1378.) The *Monticello* court noted that the plaintiffs in the underlying action alleged " '[e]xcessive cracking in the interior and exterior of the . . . property,' " " '[p]remature failure of painted

---

8     Similarly, while State Farm claims that McMillin attempts "to draw inferences from non-specific allegations" from the operative complaint in the underlying action, the law is clear that facts "inferable in the complaint" (*Scottsdale, supra,* 36 Cal.4th at p. 655) that suggest the potential for coverage trigger the duty to defend.

17

surfaces,' " and " '[w]ater damage to structure.' " (*Id*. at p. 1387.) The *Monticello* court concluded that the "excessive cracking" allegation did not reveal a possibility of coverage under the drywall installer's policy, reasoning:

> "*The word 'drywall' is not even mentioned in the underlying complaint.* There was no allegation therein that the 'excessive cracking' was in any way related to the work of [the drywall installer] or to any drywall installation. 'Cracking' and 'drywall' are not synonymous. [The insurer] was not required to speculate that the 'excessive cracking' might be attributed to the work of [the drywall installer.] [Citation.]" (*Ibid*.)

The *Monticello* court also noted that the complaint in that case alleged that damages related to " 'premature failure of painted surfaces' " and " 'water damage to structure' " were attributable to defects *other* than the drywall. (*Ibid*.) Accordingly, the *Monticello* court concluded that the complaint did not reveal a possibility that the action against the general contractor might be covered by the drywall installer's policy. (*Ibid*.)

*Monticello* does not control here because "drainage" and "rain gutters" are related in a way that " 'excessive cracking' " and " 'drywall' " are not. While a residence's drainage system necessarily includes rain gutters, " 'excessive cracking in the interior' " (*Monticello, supra*, 162 Cal.App.4th at p. 1387) does not identify a part of a residence that necessarily includes drywall. More specifically, an allegation of "excessive cracking in the interior" (*ibid*.) clearly may refer to parts of the residence *other than* drywall, such as the foundation or floors of the residence. Thus, the nonspecific allegation of " 'excessive cracking in the interior,' " without more, did not encompass an allegation that the installation of the drywall was faulty. (*Ibid*.) In contrast, in this case, the allegation that the residences had "drainage defects" raised the possibility of defects related to *any,*

18

*or all, of the components* of the drainage systems in the Housing Developments, including the rain gutters.

Further, the painting and water damages at issue in *Monticello* were *not* alleged to be "in any way related to drywall work." (*Monticello, supra*, 162 Cal.App.4th at p. 1387.) In contrast, in this case, the second amended complaint alleged that defects in the homes, including "drainage defects," *had* "resulted in damage to the homes and their component parts." (See *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of America* (N.D. Cal., Jul. 18, 2012, 5:10-CV-2856-EJD) U.S. Dist. LEXIS 100005 at *18-*19 [concluding complaint adequately alleged that subcontractor's work caused resultant damages triggering insurer's duty to defend where complaint alleged that defects attributable to subcontractor "have resulted in damage to the homes and their component parts"].) In sum, the fact that the particular factual allegations at issue in *Monticello* did not give rise to a duty to defend in that case does not compel the same result in this case.

Finally, State Farm cites several cases that support the proposition that an "insured may not speculate about *unpled* third party *claims* to manufacture coverage." (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114, italics added.) In *Gunderson*, the court concluded that the insurer did not have a duty to defend a complaint that alleged "three *equitable* causes of action to quiet title to real property, for declaratory relief, and for injunctive relief," merely because the plaintiff in the underlying case "*could* have made a claim for [damages for] 'physical injury to or destruction of tangible property,' " which would have been covered. (*Id*. at p. 1115, italics in original.) In contrast, in this case, for all of the reasons stated above, a claim at least suggesting

19

potential coverage under the State Farm Policy is pled, and thus, no speculation about "unpled third party claims" is required. (*Id*. at p. 1114.)

       2.     *State Farm has not identified evidence extrinsic to the operative complaint in the construction defect litigation that conclusively negates the possibility of coverage*

State Farm contends that "extrinsic facts made available to [it] . . . confirmed the absence of any potential claim by the homeowners for property damage arising out of DeLeon's work." To the extent that State Farm intends to maintain that it established that it did not owe McMillin a duty to defend because it presented evidence that " 'conclusively negate[d] the potential for coverage' " (*Sprinkles v. Associated Indemnity Corp*., *supra*, 188 Cal.App.4th at p. 77), we reject the argument.[9]

State Farm identifies three items of evidence that it maintains establish that there was no possibility of a covered claim. First, State Farm notes that its claim representative reviewed reports produced by the homeowners' experts in the underlying litigation. However, far from " 'conclusively negat[ing] the potential for coverage' " (*Sprinkles v. Associated Indemnity Corp*., *supra*, 188 Cal.App.4th at p. 77), the cost of repair report cited in State Farm's brief contains a subsection entitled "Gutter and Downspouts," that listed $1,079.39 in "investigative costs" and $30,070.14 for defects related to "leaking at

---

9     It is not entirely clear from its brief whether State Farm intends to contend that it presented extrinsic evidence that *conclusively negated* the possibility of coverage, or intends merely to argue that extrinsic evidence did not *trigger* a duty to defend. We reject the latter argument in light of our conclusion in part III.B.1., *ante*, that the allegations of the second amended complaint, combined with evidence that State Farm had knowledge of DeLeon's scope of work, triggered its duty to defend McMillin. In this section, we consider whether additional extrinsic evidence to which State Farm refers in its brief negated the possibility of coverage under the State Farm Policy.

20

gutter/downspout."  While the report also states that the $30,070.14 in costs to repair was "included under [r]emoval and reinstallation of gutter for fascia and/or starter plywood repairs or replacement," the report does not conclusively establish that the homeowners suffered no resultant property damage from faulty gutter installation.

Second, State Farm notes that McMillin's counsel sent an e-mail in March 2010 to homeowners' counsel in which McMillin's counsel stated, "Based on the defect list and cost of repair, there does not appear to be any defect in the installation or material associated with the rain gutters.  . . .  I have nothing; can you confirm that there [are] no defects attributable to the supply or installation of rain gutters?"  McMillin's counsel's *question* clearly does not conclusively establish the absence of any possible damage related to gutter installation, particularly since homeowners' counsel responded, "[t]here are some leaks at the gutters," and attached a photo of a leaking gutter.

Further, in a follow up e-mail sent to McMillin's counsel the following day, homeowners' counsel stated:

> "I spoke with my expert and *the only criticism of the gutter installation is the leaks*, such as the photo I sent you.  The plans show the gutter straight up against the fascia and then a separate drip edge to be installed over and into the gutter.  The separate drip edge is what is missing along with short felt not extended over the eave fascia and *other defects* allowing water to get to the underlayment, causing damaged eave fascias."  (Italics added.)

This correspondence clearly does not *conclusively establish* the *absence* of any potential coverage.

Finally, State Farm argues that McMillin's expert failed to provide "supporting information" to substantiate its hypothesis as to a manner by which gutter leaks may have

21

caused resultant property damage.  Even if true, the absence of "supporting information" to *substantiate* a theory of damage does not constitute evidence *conclusively establishing* the absence of damage.

In short, the extrinsic evidence to which State Farm refers in its brief on appeal falls far short of conclusively establishing the absence of any possible coverage under the State Farm Policy.  Accordingly, we conclude that State Farm was not entitled to summary judgment on the ground that it had no duty to defend McMillin in the underlying litigation because evidence extrinsic to the operative complaint in the construction defect litigation conclusively negated the possibility of coverage under the State Farm Policy.

## IV.

## DISPOSITION

The judgment is reversed.  State Farm is to bear costs on appeal.

_____

AARON, J.

WE CONCUR:


_____

McCONNELL, P. J.


_____

O'ROURKE, J.